DETROIT POWER SCREWDRIVER *v.* LADNEY

1. SALES—UNIFORM COMMERCIAL CODE—CONSTRUCTION.
    The Uniform Commercial Code is an integrated statute whose
    sections must be read together and accurate application of
    the Code rarely involves reference to only one section (MCLA
    § 440.1101 *et seq.*).

2. SALES—DAMAGES—SELLER'S REMEDIES—UNIQUE GOODS.
    A seller who is in the process of manufacturing goods for the
    buyer which are not readily salable when finished and who
    elects to cease manufacture on the buyer's repudiation does
    not have an action for the purchase price under the Uniform
    Commercial Code; in order to maintain an action for the
    price of the goods after the buyer has failed to pay the
    price as it became due, the seller must have tendered per-
    formance consistent with the contract (MCLA § 440.2709[1]).

3. SALES—SELLER'S REMEDIES—DAMAGES—UNIQUE GOODS—PROFIT.
    A seller in the process of manufacturing a product for the buyer
    which is not salable when finished is entitled on the buyer's
    repudiation to damages in the amount of the profit (includ-
    ing reasonable overhead) which the seller would have made
    from full performance by the buyer, together with any in-
    cidental damages, due allowance being given for costs rea-
    sonably incurred and due credit being given for payment
    or proceeds of resale; damages measured by the difference

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d, Commercial Code §§ 2, 3.
[2] 46 Am Jur, Sales §§ 588, 617.
[3, 6] 46 Am Jur, Sales §§ 626–631.
[4] 46 Am Jur, Sales §§ 617, 628.
[5] 46 Am Jur, Sales §§ 193, 194.
[7] 53 Am Jur, Trial § 1131.
[8] 5 Am Jur 2d, Appeal and Error § 974.
[9] 46 Am Jur, Sales §§ 615–644.
[10] 46 Am Jur, Sales § 625.

between the market price and the unpaid contract price are
meaningless where the goods are specialty items having no
ready market (MCLA § 440.2708).

4. SALES—DAMAGES—EVIDENCE—SUFFICIENCY.

Seller's invoice for work completed on a machine up to the date
of the buyer's stop-work order and evidence of the machine's
salvage value were sufficient to prove the amount of the
seller's damages if the machine were a specialty item, because
the invoice covered expected profits and costs and thus the
profit the seller would have made if the contract had been
fully performed less the credit for possible resale could be
computed; however, if the machine were not a specialty item,
the offered proofs would not be sufficient to establish dam-
ages, because the damages for an unfinished readily salable
item are measured by the difference between the market price
at the time and place for tender and the unpaid contract price
(MCLA § 440.2708).

5. SALES — SELLER'S REMEDIES — SUSPENDED PERFORMANCE — COM-
MERCIAL JUDGMENT.

A seller in the process of manufacturing goods for the buyer
which are unfinished may, on the buyer's repudiation, suspend
his performance where the suspension is within the exercise of
reasonable commercial judgment (MCLA § 440.2704).

6. SALES—SELLER'S REMEDIES—SUSPENDED PERFORMANCE.

The commercial reasonableness of a seller's decision to suspend
his manufacturing of goods for the buyer where the buyer
has repudiated and the goods are still unfinished depends, in
part, on whether a ready market exists for the finished goods
(MCLA § 440.2704).

7. TRIALS—NON-JURY TRIAL—FINDINGS OF FACT—COURT RULES.

The trial court when it sits without a jury must make findings
of fact (GCR 1963, 517.1).

8. APPEAL AND ERROR—FINDINGS OF FACT—NON-JURY TRIAL.

An appellate court will not decide whether a particular machine
is a specialty item for which there is no readily accessible
market even though the record might contain sufficient details
to make this finding possible; the finding should have been
made by the trial judge where he sat in a non-jury trial
and the case will be remanded for that finding.

9. SALES—DAMAGES—STORAGE—EVIDENCE.

A seller in order to be entitled to damages for his care and
custody of goods after the buyer's breach must prove the

amount of damages with reasonable certainty (MCLA
§ 440.2910).

10. SALES—DAMAGES—STORAGE—EVIDENCE—SUFFICIENCY.

Testimony by seller's employee who was a sales engineer at the
time the events giving rise to the lawsuit occurred that the
approximate cost of storing goods being manufactured for
the buyer was $1 a day was not sufficient to establish the
seller's damages for storage following the buyer's breach be-
cause the approximation was given by a witness who had not
been shown to be familiar with the storage costs or overhead
expenses.

Appeal from Macomb, Edward J. Gallagher, J.
Submitted Division 2 May 1, 1970, at Lansing.
(Docket No. 7,869.) Decided July 29, 1970.

Complaint by Detroit Power Screwdriver Com-
pany against Michael Ladney, Jr., for breach of
contract. Judgment for defendant. Plaintiff ap-
peals. Remanded for further proceedings con-
sistent with opinion.

*Dickinson, Wright, McKean & Cudlip* (*Herbert G.
Sparrow* and *Charles T. Harris,* of counsel), for
plaintiff.

*Cross, Wrock, Miller & Vieson* (*W. Robert Chand-
ler,* of counsel), for defendant.

Before: LESINSKI, C. J., and DANHOF and SNOW,*
JJ.

LESINSKI, C. J. Plaintiff Detroit Power Screw-
driver Company filed suit for breach of contract
against Michael Ladney, Jr., doing business as De-
troit Plastic Molding Co. Following trial without
jury, the court ruled that plaintiff had not carried

---

* Circuit judge, sitting on the Court of Appeals by assignment.

its burden of proof as to damages and dismissed the suit.   Plaintiff appeals as of right.

On January 5, 1967, plaintiff sent defendant a quotation for a machine described as a:

"Double-spindle stud driver, designed to select, feed and drive two shoulder studs simultaneously into plastic air scoop, at the rate of 20-pieces per minute, per spindle, minimum."

After further describing the equipment the quotation states the price of the machine ($11,750) and extra parts ($142).   The quotation then provides:

"*Delivery:* 12 weeks from receipt of order and samples.

\*       \*       \*

"*Note:* The above recommendation is made subject to receipt of actual samples of the studs, and parts into which studs are to be driven.

\*       \*       \*

"Please submit approx. 1000 studs, and 100 components, for our engineering and testing purposes."

On January 9, 1967, defendant sent its purchase order to plaintiff.   The purchase order used the description quoted above and the same price as plaintiff's quotation.   The purchase order then provided:

"*Delivery:* 12 weeks from receipt of orderand [*sic*] samples."

Defendant's purchase order was acknowledged by letter from plaintiff on January 11, 1967 which stated *inter alia:*

"The order has been entered into production and delivery has been scheduled for March 31, 1967.

"This delivery is based on *prompt* receipt of 1000 of the studs involved, along with 100 components into which the studs will be driven."

The record establishes that the samples referred to in the quotation, purchase order and acknowledge-

ment were not delivered to plaintiff until approximately February 10, 1967.

In mid-March plaintiff was notified that the studs to be used in the machine had been changed. The new studs were smaller than the original samples provided on February 10. At a meeting held March 20, it was established that the new studs could not be used in the machine as designed for the original samples. A number of changes in the machine's design to accommodate the smaller studs were agreed upon. The changes were estimated as costing $600, and at trial the cost was established at $627.

At the March 20 meeting, defendant stated he needed the machine no later than March 31. There is, however, no evidence indicating that plaintiff made a binding acceptance of the proposed change.

On April 11, 1967, defendant notified plaintiff to stop work on the machine, apparently on the grounds that plaintiff had not delivered the machine by March 31. Negotiations between the parties failed to resolve their differences. The unfinished machine was crated and put in storage. On May 11, 1967, plaintiff invoiced defendant for work completed up to the April 11 work stoppage in the amount of $12,017 for the machine and $142 for extra parts. The invoice also stated: "Additional billing of $360 to be applicable when machine is completed".[1] Upon defendant's refusal to pay, plaintiff instituted this suit.

---

[1] The various figures are related as follows:

| | |
|---|---:|
| original price of machine | $11,750 |
| redesigning costs | 627 |
| total price of machine | $12,377 |
| cost of work required to complete machine | 360 |
| invoice for work completed through April 11 | $12,017 |

At trial plaintiff's price quotation, defendant's purchase order, and plaintiff's invoice, along with other exhibits, were admitted into evidence. There was also evidence that the scrap or salvage value of the machine was $1,500.

Substantial evidence was also adduced at trial regarding the nature of the machine itself. While the record contains a highly detailed description, suffice it to say it is a very complex piece of equipment. Moreover, several important changes, requiring a good deal of redesign, differentiate this particular stud driver from the standard stud driver which plaintiff usually built.

The trial court held that a contract existed and that defendant breached the contract. The court also held, however, that plaintiff had failed to prove damages with sufficient certainty to permit a recovery.[2]

On appeal plaintiff contends that the trial court erred in its conclusion that damages were not adequately proven.[3]

---

[2] At the close of evidence and arguments the court made the following ruling:

"*The Court:* Well, the court is in complete agreement with Mr. Chandler. There is no doubt in my mind but what delivery date was to be the date set in the contract. There is no doubt but what the plastics company breached the contract, but plaintiff has failed completely to offer to the court any yardstick whatsoever by which damages could be computed.

"I have to dismiss the action, there is not one iota of testimony that would permit me to sit down and figure out how much of a judgment you should have, none whatsoever. I have been sitting here waiting for it to come ever since we started this case, and it hasn't come yet.

"Mr. Lezinski testified that the machine was half done when they had the meeting. But as Mr. Chandler pointed out, Mr. Lezinski's testimony also indicated, and it was perfectly obvious, by half done he meant the machine hadn't been assembled, and the length of time that it would take to assemble it and get it into working order was probably a big job, but probably didn't represent one-half of the cost of the machine. I have no yardstick, that is the single yardstick that was offered to me throughout the entire course of the trial. There is nothing I can do but dismiss it, dismiss the action."

No written opinion or findings of fact were filed.

[3] As this is a question of law and not of fact the "clearly erroneous"

The disposition of the instant case is clearly governed by the Uniform Commercial Code.[4] However, due to the differences between various sections providing remedies to sellers, it is necessary to make a preliminary determination of which sections of the code control the final outcome.

The code is, of course, a highly integrated statute, the sections of which must be read together. Accurate application of the code rarely involves reference to only one section.

Of the sections providing remedies for breach by the buyer,[5] plaintiff places principal reliance on MCLA § 440.2709(1) (Stat Ann 1964 Rev § 19.2709 [1]). The authority uncovered in our research, however, indicates that since the machine was not completed, § 2709(1) is inapplicable. As noted in *E–Z Roll Hardware Mfg. Co. Inc.* v. *H & H Products & Finishing Corp.* (1968), 4 UCC Rptr 1045, 1047, 1048 (NY Law J, Feb. 1, 1968, p 19):

"A seller who is in the process of manufacturing goods for the buyer which are not readily saleable when finished and who elects to cease manufacture on repudiation by the buyer does not have an action for the purchase price as such (Bender, Uniform Commercial Code Service, Vol 3, Sales & Bulk Transfers sec 13.07[4] p 13–85)."

See, also, *Rowland Meledandi, Inc.* v. *Kohn* (1969), 7 UCC Rptr 34 (NY Law J, Dec. 12, 1969, p 17).

Although the reasoning behind this conclusion is not set forth in either *E–Z Roll* or *Rowland Meledandi*, we are satisfied that it is correct for two reasons. First, the language of § 2709(1) which allows

standard, GCR 1963, 517.1 and 810(2), cited by defendant, is inapplicable.

[4] MCLA § 440.1101, *et seq.* (Stat Ann 1964 Rev § 19.1101 *et seq.*).

[5] Those possibly applicable to the instant suit are MCLA §§ 440.2708(1), 440.2708(2), 440.2709(1) (Stat Ann 1964 Rev §§ 19.2708(1), 19.2708(2), 19.2709(1)). Plaintiff also claims storage costs under MCLA § 440.2710 (Stat Ann 1964 Rev § 19.2710).

a suit for the price "when the buyer fails to pay the price as it becomes due," implies the completion of contractual conditions precedent to payment before the seller can sue for the price. Where, as here, the contract provides for "30 days net on approval; FOB our plant," the seller must complete the machine and tender performance consistent with the contract before it can sue for the price.[6]

Second, § 2709(1) includes no provisions for expenses saved due to defendant's breach.[7] According to plaintiff's invoice, $360 of expenses were not incurred due to defendant's stop order. Both § 2706 (1) and § 2708(1) close their respective damage formulas by subtracting "expenses saved in consequence of the buyer's breach." Since § 2709(1) does not include the reduction, it was probably not intended to govern situations where such savings were realized.

Since plaintiff is not entitled to the price under § 2709(1), its right to recovery is controlled by § 2708.[8]

The measure of damages under § 2708(1)[9] is:

---

[6] Although plaintiff's brief states: "Plaintiff tendered the machine to defendant, but this tender was refused," it is clear that no tender took place within the meaning of the Code. MCLA § 440.2503(1) (Stat Ann 1964 Rev § 19.2503[1]) provides: "Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition." Since the machine was never completed, plaintiff could not have held "conforming goods" for defendant's disposition.

[7] See: *Beco, Inc.* v. *Minnechaug Golf Course, Inc.* (1968), 5 Conn Cir 444 (256 A2d 522, 6 UCC Rptr 910).

[8] MCLA § 440.2709(3) (Stat Ann 1963 Rev § 19.2709[3]).

[9] It is worth noting that while § 2709(1)(b) requires a "reasonable effort to resell" unless "circumstances reasonably indicate that such effort will be unavailing," no such requirement exists for recovery under § 2708. This is clear not only from the reduction of recovery by "market price" in § 2708(1), thereby reducing the recovery by what would have been received had there been a sale, but also from the Official UCC Comment 2 for § 2706, which states that if no resale has taken place in accordance with § 2706, the seller has his remedy under § 2708. See, also, MCLA § 440.2706, Practice Commentary, by Roy L. Steinheimer, Jr.

"[T]he measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this article (section 2710), but less expenses saved in consequence of the buyer's breach."

However, § 2708(2) provides:

"If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this article (section 2710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale."

One of the few reported cases relevant to the question of which paragraph in § 2708 is applicable is *Anchorage Centennial Development Co.* v. *Van Wormer & Rodrigues, Inc.* (Alaska, 1968), 443 P2d 596 (5 UCC Rptr 811). In *Anchorage Centennial,* 50,000 gold-colored metal coins had been ordered by defendant in conjunction with a state-wide celebration of the 100th anniversary of the purchase of Alaska by the United States. The order was cancelled after the seller had already manufactured 29,-000 of the coins. At p 599 the Court stated:

"In the case at bar we are in accord with Van Wormer's argument to the effect that since there is no market for these made-to-order coins, the proper measure of damages is governed by AS 45.05.208 (b)."

The cited section is the equivalent to our § 2708(2).

We are in accord with the conclusion in *Anchorage Centennial.* A formula basing damages on the dif-

ference between market price and contract price is without meaning in the context of a contract for a specialty item which has no market.[10]

Thus, the question of whether or not the machine in the instant case is a specialty item within the meaning of the code must be determined in order to know which measure of damages applies. The question, however, also has significance in the instant case beyond the correct measure of damages.

MCLA § 440.2610 (Stat Ann 1964 Rev § 19.2610) provides in part:

"When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may

\* \* \*

"(b) resort to any remedy for breach (section 2703 or section 2711), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction; and

"(c) in either case suspend his own performance or proceed in accordance with the provisions of this article on the seller's right to identify goods to the contract notwithstanding breach or to salvage unfinished goods (section 2704)."

The right to suspend performance in § 2610, however, must be read in light of MCLA § 440.2704(2) (Stat Ann 1964 Rev § 19.2704[2]) which states:

"Where the goods are unfinished an aggrieved seller may in the exercise of reasonable commercial judgment for the purposes of avoiding loss and of effective realization either complete the manufacture and wholly identify the goods to the contract or cease

---

[10] See, also, 21 MCLA § 440.2708, Practice Commentary, by Roy L. Steinheimer, Jr., where the discussion at p 694 strongly implies that § 2708(2) was meant to apply to the breach of a contract for the manufacture of special goods.

manufacture and resell for scrap or salvage value
or proceed in any other reasonable manner."

Whether plaintiff's decision not to complete the
machine in the instant case was the result of the "ex-
ercise of reasonable commercial judgment" thus also
depends, at least in part, on whether a market exists
for the finished product.

We now return to the initial question of whether
the trial court erred in ruling that plaintiff failed
to prove damages under the code.

The record below includes plaintiff's invoice in the
amount of $12,017 dated May 11, 1967 for work
completed up to April 11, the date of defendant's
stop order.   Evidence was also introduced to show
that the scrap salvage value of the machine was
$1,500.

Our review of § 2708(2) satisfies us that the proofs
offered meet the requirements of the statutory
formula.[11]   Plaintiff's invoice was clearly intended to
cover expected profits and costs incurred during the
work done.   That amount would then be reduced by
the salvage value of $1,500.

Yet, § 2708(2) applies only "if the measure of
damages provided in subsection (1) is inadequate to
put the seller in as good a position as performance
would have done."   As noted above, however, § 2708
(1) does not apply where the contract is found to
involve a specialty item without a reasonably acces-
sible market.   Such a finding is crucial since it deter-
mines whether § 2708(1) or § 2708(2) controls the
measure of damages.   The determination of which
paragraph of § 2708 controls is, in turn, important
since plaintiff has proven its loss under paragraph

---

11 See, generally, *Stuart Kitchens, Inc.* v. *Stevens* (1967), 248
Md 71 (234 A2d 749), regarding the degree of certainty with which
losses must be proven.

(2) but has not proven the amount of its loss under paragraph (1).[12]

The ruling of the court below did not include a factual determination of whether the machine here involved is a specialty item without a reasonably accessible market. It is the function of the trial court sitting without a jury to make findings of fact. GCR 1963, 517.1. Although the record on appeal may contain sufficient details to make a finding possible, this Court is not the proper forum to make such initial determinations.

We therefore remand the case for further findings. If the trial court finds that the machine is a specialty item without a reasonably accessible market, then it shall award damages pursuant to § 2708(2). If it does not so hold, the trial court shall dismiss the action due to plaintiff's failure of proof under § 2708 (1).

On appeal plaintiff also argues that it is entitled to incidental damages for storage under MCLA § 440.2710 (Stat Ann 1964 Rev § 19.2710), which permits recovery for commercially reasonable charges for "care and custody of goods after the buyer's breach." As with all other elements of damages, however, the evidence must establish the amount of the loss with a reasonable certainty. *Detroit Independent Sprinkler Co.* v. *Plywood Products Corp.* (1945), 311 Mich 226.

The only evidence on the subject was by plaintiff's regional sales manager who was a sales engineer during 1967 when the facts of this case took place. He testified:

"So, I think proximate amount of about $1 a day would be the proper amount that would be attributed

---

[12] The record contains no evidence regarding the "market price at the time and place for tender." § 2708(1).

to space use and heat and inability to use the space for other purposes."

We do not consider this approximation by a witness who has not been shown to be familiar with either storage costs or the allocation of overhead expenses, to be sufficient proof to establish the alleged loss with reasonable certainty. We, therefore, affirm the trial court's holding that plaintiff failed to prove its loss under § 2710.

Remanded for actions not inconsistent with this opinion. We do not retain jurisdiction. Costs awarded to the prevailing party in the trial court proceeding held pursuant to this opinion.

All concurred.