GARRIS v VANDERLAAN

Docket No. 80570. Submitted July 8, 1985, at Grand Rapids.—Decided October 22, 1985.

Suzanne Garris brought an action in Muskegon Circuit Court against Gerald R. Vanderlaan, alleging serious impairment of a body function arising out of injuries sustained in an automobile accident caused by defendant. Plaintiff alleged that, as a result of the accident, she suffered a back injury and was psychiatrically disabled. In deposition testimony plaintiff indicated that since the accident she had suffered from back pain which made it more difficult to walk, drive, sit or sleep and that she had experienced psychological problems which were manifested in feelings of anger because of her physical injuries. Plaintiff did, however, indicate that, despite the pain she continued to experience, she could perform almost all the activities she was capable of performing before the accident. Medical testimony indicated that plaintiff was suffering from a post-traumatic neurosis, which is characterized by depression, anxiety, confusion and isolation and may be associated with some type of bodily injury or mental injury, and that plaintiff's post-traumatic neurosis may have been related to the automobile accident. The medical testimony indicated that there was no objective evidence of traumatic or orthopedic pathology to account for plaintiff's physical complaints and that the doctors were unable to establish a relationship between the plaintiff's back problems and the accident. Defendant moved for summary judgment on the basis that plaintiff had failed to establish that she suffered impairment of a body function within the meaning of the no-fault act such that she would be entitled to seek tort recovery for noneconomic losses. The trial court, Michael E. Kobza, J., granted defendant's motion, holding that plaintiff had failed to make the requisite showing of a serious impair-

REFERENCES FOR POINTS IN HEADNOTES

[1-5] Am Jur 2d, Automobile Insurance §§ 340 et seq.
What constitutes sufficiently serious personal injury, disability, impairment, or the like to justify recovery of damages outside of no-fault automobile insurance coverage. 33 ALR4th 767.

ment of a body function within the meaning of the no-fault act. Plaintiff appealed. *Held:*

1. Since the facts were undisputed as to the nature and extent of plaintiff's condition, the question of whether she had a serious impairment of a body function was a question of law for the trial court.

2. For there to be serious impairment of body function within the meaning of the no-fault act, there must be an objectively manifested injury which results in serious impairment.

3. The post-traumatic neurosis from which plaintiff alledgedly suffers is not an objectively manifested injury. Neither the neurosis nor the alleged back problems constitute a serious impairment, since neither condition had a significant effect upon plaintiff's ability to lead a normal life. Accordingly, the trial court did not err in holding that plaintiff had not suffered a serious impairment of a body function.

Affirmed.

J. C. RAVITZ, J., dissented. He would hold that there is a serious impairment of a bodily function within the meaning of the no-fault act where, nearly four years after an accident, plaintiff continues to have difficulty sitting, sleeping and driving and suffers from post-traumatic neurosis. He would further hold that the "medical measurement" test should not be used to bar tort recovery for noneconomic losses where an injured person's serious impairment stems from soft-tissue injuries and psychiatric trauma and where the ordinary means of diagnosis and prescription of treatment are subjective indications from a patient, since that should satisfy the objective manifestation requirement. He would reverse.

### OPINION OF THE COURT

1. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION.

   The question of whether an injury is a serious impairment of body function under the no-fault act so as to give rise to tort liability for noneconomic loss must be decided as a matter of law by the trial court where there is no factual dispute regarding the nature and extent of the plaintiff's injuries (MCL 500.3135; MSA 24.13135).

2. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION.

   The question of whether an individual has suffered a serious

impairment of a body function within the meaning of the no-fault act must be determined on a case-by-case basis; in making that determination the court must determine: (1) whether the alleged impairment is an impairment of an important body function, (2) whether the impairment is serious, and (3) whether the impairment results from objectively manifested injuries, since any recovery for pain and suffering must flow from pain and suffering associated with injuries that affect the functioning of the body (MCL 500.3135; MSA 24.13135).

3. INSURANCE — NO-FAULT INSURANCE — POST-TRAUMATIC NEUROSIS — SERIOUS IMPAIRMENT OF BODY FUNCTION.

Post-traumatic neurosis, when not associated with some objectively manifested serious impairment of a body function, is not sufficient to satisfy the threshold requirement for tort liability for noneconomic loss under the no-fault act (MCL 500.3135; MSA 24.13135).

4. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION.

A serious impairment of body function under the no-fault act is to be measured by an objective standard which looks to the effect of an injury on a person's general ability to live a normal life (MCL 500.3135; MSA 24.13135).

DISSENT BY J. C. RAVITZ, J.

5. INSURANCE — NO-FAULT INSURANCE — POST-TRAUMA NEUROSIS.

*The Legislature in adopting the serious impairment of a body function test in the no-fault act as the threshold test before there could be tort recovery for noneconomic losses did not intend that only those injuries which are capable of some medical measurement trigger the right to tort recovery; rather, the Legislature's threshold requirement is met where a doctor, on the basis of the plaintiff's complaints, diagnoses that the plaintiff is suffering from soft tissue injury and serious physical and emotional manifestations of a post-trauma neurosis caused by the automobile accident (MCL 500.3135; MSA 24.13135).*

*Tucker, Barbour & Mack, P.C.* (by *Milton L. Mack, Jr.*), for plaintiff.

*William J. Hipkiss,* for defendant.

Before: WAHLS, P.J., and ALLEN and J. C. RAV-ITZ,* JJ.

PER CURIAM. Plaintiff was injured in an automobile accident on November 24, 1979. She commenced an action on November 22, 1982, alleging serious impairment of body function. Plaintiff contended that she suffered a back injury and was psychiatrically disabled as a result of the accident. Defendant moved for summary judgment pursuant to GCR 1963, 117.2(3), on the basis that plaintiff's alleged injuries did not meet the statutory threshold for recovery of noneconomic losses, MCL 500.3135; MSA 24.13135. Defendant's motion was granted and plaintiff appeals as of right. We affirm.

If there is no material factual dispute as to the nature and extent of plaintiff's injuries, the court has the responsibility to decide as a matter of law the threshold question of whether there is serious impairment of body function. *Cassidy v McGovern,* 415 Mich 483, 502; 330 NW2d 22 (1982), *reh den* 417 Mich 1104 (1983). While the threshold question must be decided on a case-by-case basis, a few standards have developed to assist courts in this determination. First, "impairment of a body function" actually refers to an impairment of an important body function. *Cassidy, supra,* p 504. Second, by its own terms, the statute requires that an impairment be "serious". MCL 500.3135(1); MSA 24.13135(1); *Williams v Payne,* 131 Mich App 403, 409; 346 NW2d 564 (1984). Third, § 3135 applies only to objectively manifested injuries. Recovery for pain and suffering is not predicated on serious pain and suffering, but on injuries that affect the functioning of the body. *Cassidy, supra,* p 505;

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

*Williams, supra,* p 409; *Routely v Dault,* 140 Mich App 190, 193; 363 NW2d 450 (1984).

The general character of plaintiff's injuries are not seriously disputed. Plaintiff testified by way of deposition that she had back problems following the November 24, 1979, automobile accident. She found activities such as walking a couple of miles, driving, sitting and sleeping more difficult than before the accident. Following the accident, plaintiff also experienced psychological problems which were manifested in feelings of anger because of time lost due to her physical injuries. Plaintiff's deposition testimony indicated, however, that, despite the pain she allegedly continued to experience, she could still perform almost all of the activities she was capable of performing before the accident.

On September 29, 1983, plaintiff was examined by defendant's consulting psychiatrist, Charles Brosius, M.D. His deposition testimony indicated that plaintiff complained of anxiety, tension and anger. He found no evidence of psychosis, a mental illness arising in the mind itself, but instead diagnosed plaintiff's condition as post-traumatic neurosis, which is characterized by depression, anxiety, confusion, isolation and may be associated with some type of bodily injury or mental injury. The post-traumatic neurosis may have been related to the November 24, 1979, automobile accident. Dr. Brosius believed that the neurosis was temporary and would subside in a short period of time if plaintiff received psychiatric treatment.

Satyabrata Maitra, M.D., examined plaintiff on October 4, 1983, and found "no objective evidence of traumatic or orthopedic pathology to account for her physical complaints". Dr. Brosius was also unable to establish a relationship between plaintiff's back problem and the automobile accident.

We review the facts of this case, as set forth in depositions, pleadings and affidavits, by giving the benefit of any reasonable doubt to plaintiff as the party opposing the motion for summary judgment. GCR 1963, 117.2(3); *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973). We have no trouble concluding that the functioning of the mind represents an important body function, *Cassidy, supra,* p 504; however, we believe plaintiff has failed to demonstrate: (1) that she suffered a "serious" impairment of that body function; and (2) that she suffered an objectively manifested injury. *Cassidy, supra,* p 505; *Williams, supra,* p 409; *Routely, supra,* p 193.

*Cassidy* speaks of "objectively manifested injuries", not symptoms. *Williams, supra,* p 410. When considering the seriousness of the injury, we must be mindful of the other threshold requirements (*i.e.,* death and permanent serious disfigurement) and the legislative reasons for limiting the recovery for noneconomic losses, namely to prevent overcompensation for minor injuries and reduce litigation in automobile cases. *Cassidy, supra,* p 503; *Routely, supra,* p 193. Under the facts of this case, while plaintiff's post-traumatic neurosis allegedly resulted in anxiety, nervousness and feelings of anger, such symptoms did not constitute an objectively manifested injury. *Williams, supra,* p 410. Plaintiff's alleged symptoms are purely subjective. It cannot be said that plaintiff's post-traumatic neurosis surpasses the significant barrier imposed by the Legislature in requiring a "serious impairment of body function" for recovery of noneconomic losses. See *Luce v Gerow,* 89 Mich App 546; 280 NW2d 592 (1979), a pre-*Cassidy* interpretation of serious impairment of body function regarding a mental "injury".

In addition, when determining whether a certain

injury meets the threshold requirement for recovery of noneconomic loss, the court should apply an objective standard and look to the effect of the injury on the individual's ability to lead a normal life. *Braden v Lee,* 133 Mich App 215; 348 NW2d 63 (1984); *Routely, supra,* p 194. In this case, four years after the accident, plaintiff continued to experience pain in her back and suffered from psychiatric problems. Plaintiff's deposition testimony indicated, however, that she was capable of carrying out her normal day-to-day activities.

Plaintiff failed to provide evidentiary support that she suffered a serious impairment of body function. *Cassidy, supra.* Assuming that plaintiff did suffer a back injury and post-traumatic neurosis, it has not been established that such injuries significantly interfered with her normal activities. *Braden, supra.* Plaintiff's alleged injuries are not objectively manifested and are not sufficiently "serious" to rise to the level intended by the Legislature to be necessary to support an action for noneconomic losses. Plaintiff is therefore left to her remedies under the no-fault act. We conclude that the trial court correctly granted summary judgment in favor of defendant. GCR 1963, 117.2(3).

The decision of the trial court is affirmed.

J. C. Ravitz, J. *(dissenting).* I respectfully dissent. The lead opinion denies plaintiff her day in court in spite of the fact that nearly four years after the automobile accident in which she was injured she continues to have difficulty sitting, sleeping, and driving and suffers from post-traumatic neurosis.

The majority claims that plaintiff's injuries neither are objectively manifested nor affect her ability to lead a normal life.

I disagree with the proposition that no question of material fact exists with respect to plaintiff's ability to lead a normal life. Dr. Brosius testified that in July of 1984 he diagnosed plaintiff as suffering from post-traumatic neurosis. Plaintiff complained to him of anxiety and tension, and fear of driving. He felt that her psychiatric problems were temporarily disabling. He described a disabling illness as one in which the patient cannot work, drive an automobile, climb stairs, dress or feed herself. He recommended a thirty-day disability, thinking that plaintiff "would probably respond, at least to some degree, in thirty days".

Dr. John Esslinger diagnosed plaintiff on May 8, 1980, as "a 39-year-old woman who apparently has had a rather severe strain and sprain of the cervical, dorsal and lumbar ligamentous and musculature tissues, and who is having difficulty with rehabilitating from same".

On August 4, 1983, plaintiff testified that she was angry over having three to four years taken from her life and angry over losing the control she once had over her life. At the time of her deposition, August 4, 1983, plaintiff was working part-time for an agency which contracts out workers. According to plaintiff, the employment is "not as regular as I wish I could handle". Plaintiff testified that, on a weekday after work, she is "recovering from the job and the problems that it gives my back, so I usually stay home", and "stay in bed or walk around the apartment complex". Plaintiff's back injury causes her many problems. She testified that it was very uncomfortable for her to drive or sit, and that she experienced discomfort in the general movements she once took for granted. She has difficulty sleeping because it is difficult for her to find a comfortable position.

Clearly, the accident has caused plaintiff injuries

which affect her ability to lead a normal life. Sitting, driving and sleeping are activities which are a part of everyone's daily routine. Brosius felt plaintiff's neurosis was "disabling". To the extent plaintiff engages in daily activities in spite of the pain and psychiatric problems she endures in an attempt to lead a normal life, she should not be denied compensation for noneconomic loss.

I also disagree with the majority's view that plaintiff's injuries are not objectively manifested. The majority cites *Williams v Payne,* 131 Mich App 403, 410; 346 NW2d 564 (1984), in which a panel of this Court held that in order for an injury to be objectivly manifested it must be capable of "medical measurement". The "medical measurement" test espoused in *Williams* is a convenient method for reducing litigation in automobile cases. However, it is not rationally related to the Legislature's goal of preventing over-compensation for minor injuries. Soft-tissue injuries and psychiatric trauma are difficult or impossible to measure medically. Yet, persons who suffer with these injuries for years would certainly gladly trade places with those who suffer a badly fractured bone and are incapacited for 6 or 7 months, but who thereafter are able to lead perfectly normal lives. See, *e.g., Cassidy, supra,* p 504; *Range v Gorosh (After Remand),* 140 Mich App 712; 364 NW2d 686 (1984).

*Williams v Payne* suggests that the only alternative to the "medical measurement" test is the use of the "patient's complaints of pain substantiated only by the patient's limited activities". 131 Mich App 410. Where the ordinary means of diagnosis and prescription of treatment are such subjective indications from a patient, a doctor's diagnosis of injury should suffice to satisfy the objective manifestation requirement announced in *Cassidy.* See *Argenta v Shahan,* 135 Mich App 477; 354 NW2d

796 (1984). See also MRE 803(4) (statement to physician for purpose of diagnosis or treatment as exception to hearsay rule).

In the instant case, Dr. Esslinger diagnosed plaintiff after plaintiff performed range of motion, flexion, and straight-leg raising tests, during which plaintiff communicated the pain accompanying these maneuvers. Dr. Brosius diagnosed plaintiff as suffering from post-traumatic neurosis after plaintiff explained her emotions in the years following the accident. The doctors' abilities to diagnose based on these assertions should satisfy the objective manifestation requirement announced in *Cassidy*. To deny recovery because such injuries are not capable of "medical measurement" denies compensation to a large class of individuals who suffer a greatly reduced quality of life as a result of automobile accidents. Clearly, the Legislature did not intend such an arbitrary hurdle as that imposed by the "medical measurement" test.

I would reverse.