BENNETT v OAKLEY

Docket No. 85705. Submitted April 15, 1986, at Lansing. Decided July 1, 1986.

Plaintiffs, Sheila D. Bennett and Robert J. Bennett, as next friend of Todd Bennett, a minor, filed suit in Ingham Circuit Court against defendant, Carl R. Oakley. Plaintiffs sought damages for noneconomic losses under the no-fault act, alleging that both Sheila D. Bennett and Todd Bennett sustained serious impairment of body function from injuries they suffered in an automobile accident involving defendant. Defendant moved for summary disposition as to plaintiff Sheila D. Bennett (hereinafter referred to as plaintiff), arguing that there was no genuine issue as to any material fact and that he was entitled to judgment as a matter of law because plaintiff's injuries did not meet the threshold requirement for serious impairment of body function. The trial court granted defendant's motion, Robert Holmes Bell, J. Plaintiff appealed. *Held:*

1. Plaintiff's cervical strain or soft-tissue injury to her neck and the fact that it resulted in headaches and painful muscle spasms were not disputed by defendant. However, the Court of Appeals, after giving plaintiff the benefit of the doubt over whether muscle spasms constitute objectively manifested injury, concluded that plaintiff's injuries did not have a significant impact on plaintiff's ability to lead a normal life or her ability to continue her employment so as to satisfy the threshold requirement for a recovery for noneconomic loss for serious impairment of body function under the no-fault act.

2. The threshold requirement for serious impairment of body function as applied in this case was not unconstitutionally vague nor did it deny plaintiff the equal protection of the law.

3. The question of serious impairment of body function is a question of law for the court to decide where, as in this case,

REFERENCES

Am Jur 2d, Automobile Insurance §§ 349 *et seq.*

What constitutes sufficient serious personal injury, disability, impairment, or the like to justify recovery of damages outside of no-fault automobile insurance coverage. 33 ALR4th 767.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

there is no factual dispute regarding a plaintiff's injuries. Therefore, plaintiff's claim that she was denied her right to jury trial was found by the Court of Appeals to be without merit.

Affirmed.

1. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION — APPEAL — STANDARD OF REVIEW.

The Court of Appeals, when reviewing a trial court's decision as a matter of law that injuries suffered by a plaintiff do not constitute a serious impairment of body function for purposes of noneconomic tort recovery under the no-fault act, must first review the facts in a light most favorable to the plaintiff and determine whether the trial court erred in finding no material factual dispute existed regarding the nature and extent of the plaintiff's injuries, and then determine whether, as a matter of law, plaintiff suffered a serious impairment of body function (MCL 500.3135; MSA 24.13135).

2. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION.

A court should apply an objective standard and look to the effect of the injury on the individual's general ability to lead a normal life when determining whether a certain injury meets the threshold requirement of the no-fault act for recovery of noneconomic loss; general pain and suffering is not sufficient to meet the threshold (MCL 500.3135; MSA 24.13135).

3. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION — CONSTITUTIONAL LAW — EQUAL PROTECTION.

The threshold requirement for serious impairment of body function, applied on a case-by-case basis, is not unconstitutionally vague nor does it deny a plaintiff the equal protection of the law (MCL 500.3135; MSA 24.13135).

4. INSURANCE — NO-FAULT INSURANCE — SERIOUS IMPAIRMENT OF BODY FUNCTION.

Whether an injury is a serious impairment of body function under the no-fault act so as to give rise to tort liability for noneconomic loss is a question of law for the trial court to decide where there is no factual dispute regarding the nature and extent of a plaintiff's injuries (MCL 500.3135; MSA 24.13135).

*Bobay, Kaechele & Wilensky, P.C.* (by *Thomas P. Bobay*), for plaintiff.

*Willingham, Coté, Hanslovsky, Griffith & Foresman, P.C.* (by *Frederick M. Baker, Jr.,* and *Curtis R. Hadley*), for defendant.

Before: ALLEN, P.J., and MACKENZIE and J. P. SWALLOW,* JJ.

PER CURIAM. Did the trial court err on June 23, 1985, by granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10),[1] on grounds that plaintiff Sheila D. Bennett's injuries did not meet Michigan's no-fault threshold for serious impairment of body function, MCL 500.3135; MSA 24.13135, as defined by *Cassidy v McGovern,* 415 Mich 483; 330 NW2d 22 (1982), reh den 417 Mich 1104 (1983)? We answer this question in the negative and affirm.

Plaintiff was injured August 24, 1981, when the vehicle she was driving collided with defendant's vehicle at the intersection of Lake Lansing Road and Wood Street, Ingham County, Michigan. Defendant, who was making a left turn, pulled into the path of plaintiff's on-coming vehicle. Plaintiff and her son, Todd, who was a passenger in plaintiff's vehicle, were taken by ambulance to Lansing General Hospital.

At the hospital emergency room, plaintiff was treated and released by her physician, Dr. T. Y. Karikomi. Dr. Karikomi prescribed analgesics and muscle relaxants. Plaintiff returned to Dr. Karikomi on September 8, September 9, and September 22, 1981, still complaining of facial pain and constant headache. Some cervical bed traction was prescribed and Dr. Karikomi extended plaintiff's sick leave from her job at General Motors, Oldsmobile Division, in Lansing.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Formerly GCR 1963, 117.2(3).

Because of plaintiff's continuing headaches and muscle spasms, she was hospitalized from September 25, 1981, until October 3, 1981. On October 16, 1981, she started prescribed isometric exercises and was given manipulative therapy. In November, 1981, Dr. Karikomi noted a decrease in plaintiff's range of neck motion to the left. The range of motion was sluggish due to pain and tenderness.

From October through December, 1981, plaintiff continued to be treated with analgesics and muscle relaxants and was advised to continue cervical traction from one to two hours a day. Plaintiff stated that the cervical traction was confining and that she used it only for a short time. Dr. Karikomi continued to treat plaintiff on a regular basis during 1982 and 1983. Plaintiff's condition was diagnosed as post-traumatic myofascial pain or myospasms. In August, 1982, Dr. Karikomi examined plaintiff and found palpable paracervical myospasms on the right, an objective finding of a knotting up of segments of the same muscle group on the right side of the neck. Although the range of motion of plaintiff's neck was within normal limits, Dr. Karikomi scheduled an orthopedic consultation at the University Hospital in Ann Arbor, Michigan.

At Ann Arbor, plaintiff was evaluated by Dr. Michele Zembo who found that plaintiff was in no acute distress, had full range of motion of the neck and no palpable paraspinous muscle spasms. X-rays revealed no abnormalities. Dr. Zembo recommended that plaintiff try Motrin, an anti-inflammatory medication, and try a pain clinic to "alleviate her problem." At defendant's request, plaintiff was also examined by Dr. George Ferre, a Hillsdale physician. Dr. Ferre stated that examination of plaintiff's neck revealed pain on extreme rotation and tightness in the posterior neck muscula-

ture, with tenderness over the greater occipital nerve. According to Dr. Ferre, plaintiff suffered a moderately severe soft-tissue injury of the cervical spine which would resolve itself within eighteen to twenty-four months.

At Auto-Owners Insurance Company's request, plaintiff was also examined by Dr. Thomas Allen. In a letter to Auto-Owners, Dr. Allen stated that, at the time he examined plaintiff, he found plaintiff's neck to have a full range of motion. Dr. Allen found no palpable paraspinous muscle spasm and no spasm in the trapezious or rhomboid musculature. X-rays showed no significant abnormalities.

Following the accident, plaintiff's primary complaint was headache and pain in the upper back and neck. She stated that she never had a headache prior to the accident, but after the accident, she began to suffer severe headaches, primarily at the base of the head and the top of the neck. She stated that, although she nearly always felt pain, her headaches occasionally became so severe that she could not tolerate light and was prevented from doing normal activities. Before plaintiff became pregnant, plaintiff took Parafon Forte and Darvon for pain.

Prior to the August, 1981, accident, plaintiff worked at General Motors, building Oldsmobile front-end pieces (fascias). However, because of plaintiff's neck injury, plaintiff was able to work only one day before being assigned to a less strenuous job as a tally person, noting problems with nearly completed cars on the assembly line. She terminated her employment on October 16, 1983. While on sick leave in October, 1982, her employer classified her as being on "controlled absence" on her record. She further stated that prior to actually terminating her employment in October, 1983, she had planned to leave her job at General Mo-

tors as of January 1, 1984, in order to become a full-time homemaker.

When asked if there were hobbies and recreational activities in which plaintiff could no longer engage, plaintiff stated that she could no longer run. Plaintiff testified that she ran about two miles a day prior to the accident, but because the jarring from the running aggravated her injuries, she was no longer able to run. Plaintiff participated in no other recreational activities either before or after the accident. In discussing her relationship with her husband, she stated that, prior to the accident, she had no intention of remarriage. However, after the accident, plaintiff married Robert Bennett and was "glad I had him to turn to." Bennett adopted plaintiff's son, Todd, and at the time of her November, 1983, deposition, plaintiff was pregnant.

Plaintiff testified that, following the accident, she could do the housekeeping chores she did prior to the accident, except vacuuming. According to plaintiff, the vibration of the vacuum cleaner aggravated her neck. Driving a car was an activity plaintiff also chose to avoid. Plaintiff stated that she did not "feel secure" driving and that driving required "too much head-turning." Head-turning was painful for her.

Plaintiffs' complaint, filed July 13, 1983, alleged that both Sheila D. Bennett and Todd Bennett sustained serious impairment of body function and permanent serious disfigurement as a result of the August 24, 1981, accident. The complaint also alleged that, because of his mother's injuries, Todd had sustained damages caused by loss of society and companionship. On April 8, 1985, defendant filed a motion for summary disposition, arguing that there was no issue of material fact regarding Sheila D. Bennett's claim and that defendant was entitled to judgment as a matter of law.

Following the hearing on the motion held May 22, 1985, the trial court rendered an oral opinion granting defendant summary disposition against Sheila D. Bennett. The court's oral opinion was incorporated into a June 3, 1985, order from which plaintiffs appeal as of right. Two issues are raised on appeal: (1) Did the trial court err in finding, as a matter of law, that Sheila D. Bennett's injuries did not meet Michigan's no-fault threshold for serious impairment of body function? and (2) Did the trial court err by applying an unconstitutionally vague standard rather than the standard mandated by the Legislature for recovery from noneconomic loss under Michigan's no-fault act?

I

Contrary to plaintiffs' assertion that a material factual dispute exists, our review of the transcript indicates that the defendant does not dispute the fact that Sheila Bennett incurred a soft-tissue injury and that she experienced headaches and neck pain. The only dispute is whether those injuries amount to serious impairment. Since the trial court held these injuries did not meet the *Cassidy* threshold, we initially must decide by what standard the trial court's decision ought to be judged upon appellate review.

Two panels of this Court have held that the correct standard of review in cases involving serious impairment of body function is the "clearly erroneous" standard. *Kelleher v Kuchta,* 138 Mich App 45, 47; 359 NW2d 224 (1984); *Walker v Caldwell,* 148 Mich App 827; 385 NW2d 703 (1986). Other decisions have employed the "in a light most favorable to the injured plaintiff and determine whether reasonable minds could differ on whether the impairment suffered was serious"

standard of review. *Garris v Vanderlaan,* 146 Mich App 619, 624; 381 NW2d 412 (1985); dissent of KELLY, J., in *Kelleher* and cases cited therein, *Id.,* p 45. Since the clearly erroneous standard does not apply to questions of law, *People v Green,* 113 Mich App 699, 706; 318 NW2d 547 (1982); *Detroit Power Screwdriver v Ladney,* 25 Mich App 478, 483-484, n 3; 181 NW2d 828 (1970), we will review the facts in the instant case in a light most favorable to plaintiff in order to determine if the trial court erred in finding no material factual dispute regarding the nature and extent of plaintiff's injuries. *Cassidy* and *Garris, supra.* Where there is no material factual dispute, this Court should further determine, as a matter of law, whether there has been a serious impairment of body function. *Cassidy.*

The applicable law in cases asserting serious impairment of body function is best summarized in *Sherrell v Bugaski,* 140 Mich App 708, 710-711; 364 NW2d 684 (1984):

> When considering the seriousness of the injury, the court should be mindful of the other threshold requirements for recovery of noneconomic loss (*i.e.,* death and permanent serious disfigurement), and the legislative reasons for limiting the recovery of noneconomic losses, namely, to prevent overcompensation for minor injuries and to reduce litigation in automobile accident cases. *Williams, supra; Braden v Lee,* 133 Mich App 215; 348 NW2d 63 (1984). When determining whether a certain injury meets the threshold requirement for recovery of noneconomic loss, the court should apply an objective standard and look to the effect of the injury on the individual's general ability to lead a normal life.

Clearly, plaintiff suffered a cervical strain or soft-tissue injury to the neck which resulted in head-

ache and neck pain. Appellee's doctors agreed to that diagnosis. Furthermore, the injury was objectively manifested. Dr. Karikomi, plaintiff's physician, testified:

> *Q.* As of 8-23-82, did you find any objective findings, physical findings, to support Sheila Bennett's subjective complaints?
>
> *A.* Now I will repeat again, she had palpable paracervical muscle spasms on the right. Tenderness along the trapezius muscle on the right.
>
> *Q.* Well, tenderness, is that something that you say is objective or subjective?
>
> *A.* Both. There are trigger areas that you look for, and you palpate that area. And if you find that the findings are asymmetrical, then that indicates that she has had some injury, past injury, in the area.
>
> *Q.* So you found objective findings?
>
> *A.* Yes.

Palpable muscle spasms were observed. Self-reported pain and suffering does not meet the threshold requirement for an objectively manifested injury. *Williams v Payne,* 131 Mich App 403, 410; 346 NW2d 564 (1984). However, where muscle spasms are medically observable, one panel of this Court has found proof of an objectively manifested injury. *Franz v Woods,* 145 Mich App 169; 377 NW2d 373 (1985). Other panels of this Court (including one member of the present panel) have held to the contrary. *Flemings v Jenkins,* 138 Mich App 788, 790; 360 NW2d 298 (1984); *Morris v Levine,* 146 Mich App 150, 154; 379 NW2d 402 (1985).

Giving plaintiffs the benefit of the doubt, and assuming arguendo that we follow the *Franz* panel that the injuries are "objectively manifested," we still find that plaintiffs have failed to establish the

seriousness requirement of a serious impairment of body function. Admittedly, Sheila Bennett experiences neck pain and headaches which, when they are severe, cause her to be unable to function. Admittedly she nearly always suffers from headaches. However, the only activities in which she is no longer able to engage regularly are running, vacuuming, and driving an automobile. Plaintiff stated that she did not have any other recreational activities, other than running, prior to the accident and that, subsequent to the accident, she gave up running because the "jarring" aggravated her condition. The vibration caused by holding a vacuum cleaner also aggravated the pain in plaintiff's neck. Driving a car caused plaintiff to suffer neck pain from turning her head. She stated that her problem with driving was two-fold, that she suffered neck pain and that she was afraid to drive. Thus, any limitation in her normal driving pattern cannot be definitely ascribed to her injury.

Further, nothing in the record indicates that plaintiff was limited from participating in any physical activity by her doctor. Self-imposed limitations do not meet the threshold requirements for serious impairment. *Franz v Woods, supra.* Viewing the testimony in its entirety, we are not persuaded that plaintiff's injuries had a significant impact on her ability to lead a normal life. *Sherrell v Bugaski, supra.* Except for vacuuming, plaintiff is able to do the household activities she performed prior to the accident. Plaintiff also stated that her family relationships have not suffered as a result of the accident. In fact, plaintiff married and became pregnant after being injured.

Whether plaintiff's ability to continue her employment at General Motors is indicative of a serious impairment of body function presents a closer question relating to plaintiff's ability to lead

a normal lifestyle. Plaintiff did not return to work following the August 24, 1981, accident until November 3, 1981, did not work from July, 1982, until October, 1982, and in August, 1983, requested a doctor's note so that she could be placed on sick leave. However, the testimony also disclosed that her physical ailments in 1983 were related to her menstrual problems as well as neck pain, and pregnancy was confirmed in October, 1983. Given the fact that she terminated her employment at General Motors not long after becoming pregnant and that she planned to become a full-time homemaker as of January 1, 1984, we are unable to conclude that her injuries were so serious as to constitute a *serious* impairment of body function.

Although plaintiff suffered pain, she did continue to work during most of the time period between the accident and her voluntary termination of employment. This Court has held that time off from work due to an accident does not change the intrinsic nature or extent of an injury. *Franz, supra.* Again we note that plaintiff's termination of employment was voluntary, rather than medically mandated, and her absence from work prior to termination was only partially a result of neck pain.

Finally, we observe that plaintiff's injuries were not serious, especially viewed in light of the other threshold requirements of the no-fault act, namely, death and permanent serious disfigurement. *Williams, supra,* p 409. Nor, as explained above, have the injuries resulted in a significant impact on her ability to bear a child and lead a normal life. Accordingly, as to issue I we find no error.

II

Plaintiffs claim that § 3135 of the no-fault act, as

applied by the trial court in the instant case, is unconstitutional. Plaintiffs come to this conclusion on two grounds. First, that the threshold standard for serious impairment of body function applied by the trial court was so vague that it violated the equal protection rights guaranteed by US Const, Am XIV and Const 1963, art 1, § 2. Second, that the right to trial by jury was denied. *Whitson v Whiteley Poultry Co,* 11 Mich App 598; 162 NW2d 102 (1968). Admitting that the constitutional issue was not raised in the trial court, plaintiffs contend that the issue is of such importance that it should be considered on appeal.

Generally, where a plaintiff fails to raise an issue in the trial court, including a constitutional issue, appellate review is precluded. *Brookdale Cemetery Ass'n v Lewis,* 342 Mich 14, 18; 69 NW2d 176 (1955); *Lumber Village, Inc v Siegler,* 135 Mich App 685, 692; 355 NW2d 654 (1984); *Harris v Pennsylvania Erection & Construction,* 143 Mich App 790, 795; 372 NW2d 663 (1985). However, where the question raised is one of law and where it may be decided without reference to disputed material issues of fact, this Court may review the claim. *Harris, supra.*

However, we need not base our opinion on the grounds that the issue was not raised at the trial level. Clearly, the standard employed by the trial court was the standard prescribed by the Supreme Court in *Cassidy v McGovern, supra.* Equally clearly, the trial court meticulously and almost by rote applied the tests laid down in *Cassidy* and further detailed in post-*Cassidy* type opinions of this Court. Just because the standard must be applied on a case-by-case basis (*Cassidy, supra,* p 503) does not mean that the statute is unconstitutionally vague or that it is a denial of equal protection.

We reject the argument that trial by jury has been denied. The right to trial by jury applies to questions of fact. In *Cassidy*, our Supreme Court held that whether the serious-impairment threshold had been met was a question of law, not a question of fact. *Cassidy, supra,* p 502. See, also, *Burk v Warren (After Remand),* 137 Mich App 715, 725; 359 NW2d 541 (1984), lv granted 422 Mich 938 (1985). Defendant did not dispute the factual issue relating to the nature and extent of plaintiff's injury. (See issue I). When there is no factual dispute regarding the nature and extent of a plaintiff's injuries, the question of serious impairment of body function is not decided as a question of fact by the jury, but as a matter of law by the trial court. *Cassidy, supra,* p 502. Accordingly, we find no error as to issue II.

Affirmed.