FRANZ v WOODS

Docket No. 78775. Submitted March 19, 1985, at Detroit.—Decided August 20, 1985.

Plaintiff, Mary Louise Franz, brought an action in the Oakland Circuit Court against defendant, Ruth Woods, alleging serious impairment of body function as a result of injuries sustained when her car was struck in the rear by a car driven by defendant. At the close of plaintiff's proofs, defendant moved for a directed verdict on the basis of failure to establish a serious impairment of body function. The court, Robert C. Anderson, J., granted the motion. Plaintiff appealed. *Held:*

The court must decide as a matter of law whether the plaintiff has suffered a serious impairment of body function where there is no factual dispute regarding the nature and extent of a plaintiff's injuries or where a factual dispute is not material to the determination. An appellate court views the evidence in the light most favorable to the nonmoving party when reviewing a trial court's decision on a motion for a directed verdict. A serious impairment of body function under the no-fault act is to be measured by an objective standard which looks to the effect of an injury on a person's general ability to live a normal life. An injury, to meet the threshold, must be objectively manifested and related to an impairment of an important body function. Permanency of the injury is relevant but not essential to a finding of serious impairment. The only evidence of an objective manifestation of injury to plaintiff concerned muscle spasms. There was no evidence as to any relation between her muscle spasms and any serious impairment of important body function.

Affirmed.

---

Rᴇғᴇʀᴇɴᴄᴇs ғᴏʀ Pᴏɪɴᴛs ɪɴ Hᴇᴀᴅɴᴏᴛᴇs

[1] Am Jur 2d, Appeal and Error § 886.
See the annotations in the ALR3rd/4th Quick Index under Direction of Verdict.

[2, 3, 4] Am Jur 2d, Automobile Insurance §§ 348-350.
What constitutes sufficiently serious personal injury, disability, impairment or the like to justify recovery of damages outside of no-fault automobile insurance coverage. 33 ALR4th 767.

1. Appeal — Directed Verdicts.

An appellate court views the evidence in the light most favorable to the nonmoving party when reviewing a trial court's decision on a motion for a directed verdict.

2. Insurance — No-Fault Insurance — Tort Liability — Serious Impairment of Body Function.

The court must decide as a matter of law whether the plaintiff has suffered a serious impairment of body function where there is no factual dispute regarding the nature and extent of a plaintiff's injuries or where a factual dispute is not material to the determination (MCL 500.3135; MSA 24.13135).

3. Insurance — No-Fault Insurance — Serious Impairment of Body Function.

A serious impairment of body function under the no-fault act is to be measured by an objective standard which looks to the effect of an injury on a person's general ability to live a normal life; an injury, to meet the threshold, must be objectively manifested and related to an impairment of an important body function; permanency of the injury is relevant but not essential to a finding of serious impairment (MCL 500.3135; MSA 24.13135).

4. Insurance — No-Fault Insurance — Serious Impairment of Body Function.

The seriousness of a plaintiff's injury under the no-fault act must be determined by an objective evaluation of its effect on the person's body functions and the ability to perform common day-to-day activities, and not by extrinsic considerations such as the nature of the person's employment.

*Peter Pappas, P.C. (by Ellen E. Mason),* for plaintiff.

*Beier, Howlett, Hayward, McConnell, McCann, Jones, Kingsepp & Shea (by Pamela Gaudreau Shea),* for defendant.

Before: Wahls, P.J., and Bronson and T. C. Megargle,* JJ.

Per Curiam. Plaintiff commenced an action for

---

* Circuit judge, sitting on the Court of Appeals by assignment.

injuries sustained in an April 6, 1978, automobile accident. The case came on for trial before a jury in April, 1984. At the close of all medical proofs on the threshold issue of serious impairment of body function, defendant moved for a directed verdict. The trial court granted the motion, concluding that plaintiff had not met the threshold. Plaintiff appeals as of right.

## I

The record discloses the following. Plaintiff was stopped at a red light late in the evening when her car was rear-ended by defendant's car. Plaintiff hit the steering wheel, then her seat tore loose from its tracks and her head hit the rear window. The car was totaled—the roof buckled, the gas tank ruptured and the frame was bent so badly that the rear wheels were lifted off the ground. While defendant was incoherent and was taken to a hospital by ambulance, plaintiff appeared to the police who arrived at the scene to be uninjured.

The police drove plaintiff to the hospital, where she was x-rayed, given a soft cervical neck brace and a prescription, and released with instructions to see her family physician the next day. Plaintiff returned to the hospital the following day for more x-rays and then went to her doctor. She visited her doctor thrice weekly for three weeks and received ultrasound treatments, muscle-relaxant shots, tranquilizers and pain killers. Plaintiff then sought the services of a chiropractor but quit that after ten visits, feeling no better. On July 4, 1978, plaintiff's left arm went numb, so the next day she went to Dr. Vaitas, who in turn sent her to a physical therapist. From July, 1978, until February, 1979, plaintiff received therapy about five times weekly. Feeling that her condition was wors-

ening, plaintiff went to Dr. Berke, a neurologist, in December, 1978. Dr. Berke saw plaintiff monthly from May, 1979, to March, 1981.

Plaintiff testified that she and her husband were athletic, outdoorsy types but, after the accident, she was in constant pain and unable to engage in any demanding physical activity. Consequently, her marriage deteriorated to the point that her husband left her in favor of a more active female companion.

Plaintiff's job as a manager of a bowling center ended July 4, 1978, because she could not work on a consistent basis. For approximately six weeks in 1983, plaintiff worked three to four days a week as a waitress, but she quit that job because the stress of trying to care for her children and trying to work in her condition was too great.

Plaintiff testified that she did vacuuming and light housework at home, that she got up in the morning with her children and got them ready for school and that in the evening her children gave her backrubs. She had the children doing their own laundry and dishes. She took medication: a slight tranquilizer with muscle relaxant and, periodically, an analgesic.

Plaintiff described her injuries as continuing pain in the back, including the lower back, and the neck, with shooting pains radiating into her legs and occasional numbness in her left arm. Plaintiff said that she had considerable muscle spasms continually in her back, lower back and shoulders. She also claimed that her neck muscles were soft so that, if she turned her head really sharply or too far, she experienced excruciating pain.

II

In reviewing the grant of defendant's motion for

directed verdict, we view the evidence in a light most favorable to plaintiff. Factual disputes regarding the extent or nature of plaintiff's injury may thus be rendered immaterial, enabling us to decide as a matter of law whether plaintiff has failed to make the threshold showing of serious impairment of body function. *Cassidy v McGovern,* 415 Mich 483, 502; 330 NW2d 22 (1982), *reh den* 417 Mich 1104 (1983); *Argenta v Shahan,* 135 Mich App 477, 488; 354 NW2d 796 (1984), *lv granted* 421 Mich 858 (1985).

In *Cassidy, supra,* the Supreme Court established several standards for the courts to use in determining if an alleged injury constitutes serious impairment of body function. The impairment must be of an *important* body function, 415 Mich 504, and must be determined in light of "the effect of an injury on the person's general ability to live a normal life". 415 Mich 505. Permanency of an injury is relevant but not necessary to a finding of serious impairment. 415 Mich 505-506. Also, the injury must be objectively manifested. 415 Mich 505.

The threshold of serious impairment of body function is a significant obstacle to a tort action for noneconomic loss. The Legislature intended to retain the tort remedy for the catastrophically injured. *Workman v DAIIE,* 404 Mich 477, 509; 274 NW2d 373 (1979). As an aid in setting the serious impairment threshold at the proper level, the courts are to consider the threshold in conjunction with the other threshold requirements of death and permanent serious disfigurement, *Cassidy, supra,* p 503, and with the legislative reasons for limiting the recovery for noneconomic losses. 415 Mich 500, *Braden v Lee,* 133 Mich App 215, 217; 348 NW2d 63 (1984).

## A

The circuit court did not clearly explain its reason for concluding that plaintiff had not established the threshold for recovery of noneconomic damages. It appears that the court relied, at least in part, on a perceived failure by plaintiff to claim that her injuries were indeed objectively manifested. Plaintiff points to testimony at trial regarding muscle spasms and scarring. We will discuss these claims of injury as well as others made at trial in order to give a more complete picture of plaintiff's condition and of the state of the law at this time.

Plaintiff's injury is admittedly one of the "soft tissue" variety. The no-fault act makes no distinction between persons with soft-tissue injuries and those with other injuries. *Vreeland v Wayman,* 141 Mich App 574; 367 NW2d 362 (1985). Nevertheless, the *Cassidy* requirement that an injury be objectively manifested has proved especially difficult for persons with soft-tissue injuries to satisfy. In this case, for instance, the battery of tests administered to plaintiff included x-rays, a myelogram, an electromyogram, a CAT scan and an electroencephalogram. These tests proved negative, ruling out bone or nerve damage. The tests were not, however, probative of injury to muscles, tendons and ligaments.

Plaintiff testified that her body hurt her like she had a bad toothache all over and that she felt increased pain upon or after engaging in physical activities. This sort of evidence is always present in tort actions for pain and suffering and could not have been intended by the Legislative as satisfying the threshold. *Williams v Payne,* 131 Mich App 403, 410; 346 NW2d 564 (1984). "Recovery for pain and suffering is not predicated on serious pain and suffering." *Cassidy, supra,* p 505.

Dr. Vaitas and Dr. Berke testified on plaintiff's behalf that they found tenderness over areas of plaintiff's back. Dr. Vaitas acknowledged on cross-examination that tenderness is a subjective complaint and the doctor must rely on what the patient says with regard to pain. Thus, the medical findings of tenderness do not rise to the level of objective manifestation. *Flemings v Jenkins,* 138 Mich App 788, 790; 360 NW2d 298 (1984).

Dr. Berke testified on plaintiff's behalf that he found limited range of motion of plaintiff's neck and back. On cross-examination, Dr. Berke described the testing as "active" testing, meaning that plaintiff did the bending and it was in her control when to stop the motion. Since the doctor's findings do not show that plaintiff's limited flexion was anything more than a limitation self-imposed because of real or perceived pain, we do not accept the findings as objective manifestation of injury. *Salim v Shepler,* 142 Mich App 145; 369 NW2d 282 (1985). In contrast, we note that this Court in *Argenta, supra,* p 488, found objective manifestation of injury where the medical witness had used a "passive" range of motion test described as "totally objective".

Dr. Vaitas also testified regarding scarring. On the facts of this case, we conclude that no objective manifestation of injury was shown. Dr. Vaitas assumed, based on plaintiff's history, condition and complaints, that plaintiff had suffered extensive soft tissue injuries. Such injuries inescapably involved stretching, pulling or other damage to nerves, muscles and ligaments, he said, and in turn, science assumes some tearing and microscopic bleeding which leads to permanent scarring. However, Dr. Vaitas did not testify that he felt, saw or tested objectively for scarring. We do not

accept his chain of assumptions as establishing objective manifestation of injury.

Dr. Vaitas testified that plaintiff complained of frequent spasms of the neck and back. His examination revealed spasms located mostly in the upper shoulder areas and the neck. He described a spasm as a swelling or shortening of the muscle. He explained that, when the muscle mass contracts, it leaves a hump which can be felt by the examiner. From this testimony, we are persuaded that the finding of muscle spasms is an objective manifestation of injury. To the extent that *Flemings, supra,* expresses or implies otherwise, we disagree with that opinion.

Dr. Berke also testified regarding muscle spasms. In his examinations of plaintiff in June and July, 1979, he found no spasms. In August, 1979, he did not record a finding as to spasms but in September, 1979, he found grade one spasms. Dr. Berke explained that spasms are objective findings determined through the senses of the examiner and are graded on a scale of zero to four, zero being normal, one being minimal abnormality and four being maximum abnormality. Dr. Berke's testimony thus supports our conclusion that objective manifestation of injury has been shown by evidence of muscle spasms.

"Recovery for pain and suffering is * * * predicated * * * on injuries that affect the functioning of the body." *Cassidy, supra,* p 505. It is not enough merely to show an injury; that injury must be related to impairment of an important body function. In this case, Dr. Berke stated that the muscle spasms could have had something to do with a slight straightening of plaintiff's spine, but he did not state what effect, if any, the straightening had on plaintiff's body function. Nor did he otherwise state what effect muscle spasms would

have on plaintiff's body function. Neither did Dr. Vaitas. The only thing that plaintiff has shown to affect body function is her own complaints of pain. Accordingly, we hold that plaintiff has not satisfied the threshold for recovery of noneconomic damages because she has not shown an objectively manifested injury constituting serious impairment of body function.

## B

Even assuming that we can infer that plaintiff's muscle spasms affected an important body function, we do not find that plaintiff has established the seriousness requirement.

Dr. Vaitas was of the opinion that plaintiff was suffering from a moderate soft tissue injury. Dr. Berke concluded that plaintiff had a disability from lifting, bending and twisting with a 20 to 25 pound weightlifting restriction. There was no testimony, though, that plaintiff was prohibited from engaging in work or social activities. *Sherrell v Bugaski,* 140 Mich App 708, 711; 364 NW2d 684 (1984). Dr. Berke believed there was a psychological component to plaintiff's injury.

It is clear that plaintiff sets her own limits for many of her activities. *Braden, supra,* p 218. As she said about bowling, she quit because she knew that, when she bowled, she would suffer later. She does housework but limits the amount by having her children do their own laundry and dishes. While plaintiff's testimony indicates a significant change in *her* normal life style—an athletic, outdoors one—we believe that she has the general ability to live what can objectively be termed *a* normal life. *Cassidy, supra,* p 505, *Routley v Dault,* 140 Mich App 190, 194; 363 NW2d 450 (1984), *lv granted* 422 Mich 935 (1985).

The fact that plaintiff quit her jobs as bowling

center manager and waitress because of the physical activity involved "does not change the intrinsic nature or extent of the injury". *Routley, supra,* p 195.

"The seriousness of the injury must be determined by an objective evaluation of its effect on the person's body functions and the ability to perform common day-to-day activities, and not by extrinsic considerations such as the nature of the person's employment." *Id.*

Nor are we persuaded that plaintiff's reduction in social activites objectively establishes seriousness. In *Kucera v Norton,* 140 Mich App 156, 159; 363 NW2d 11 (1984), the plaintiff allegedly could not ski, snowmobile or hunt as he could before the injury, but this Court concluded that the injury could not be considered on a par with death or serious permanent disfigurement.

### III

We conclude as a matter of law that plaintiff has not shown an injury that affects an important body function or a serious impairment of a body function. Accordingly, we affirm the circuit court's grant of a directed verdict in defendant's favor on the basis that plaintiff failed to make the threshold showing of serious impairment of body function in order to recover noneconomic damages under MCL 500.3135; MSA 24.13135.

Affirmed.