WOOD v DART

Docket No. 85057. Submitted July 28, 1986, at Detroit. Decided September 9, 1986. Leave to appeal applied for.

Lillie Mae Wood was injured when a van driven by Kenneth F. Dart struck the rear of the vehicle driven by Wood. Wood suffered injury to her cervical spine and was under a doctor's weekly care for more than five years. Medical tests revealed that Wood suffered diffuse irritation of the lumbosacral nerve root. The condition has caused her to be confined to bed or home at various times and precluded her return to work for 3½ years and then only with limitations as to the type and amount of work. Lillie Mae Wood, Various Wood and Mark Wood by his next friend, Y. F. Wood, Jr., brought an action in Wayne Circuit Court for lost earnings and for noneconomic losses resulting from the accident. Defendants moved for summary judgment on the noneconomic loss claim on the basis that plaintiffs had failed to establish that Lillie Mae Wood had sustained a serious impairment of a body function. The trial court, Clarice Jobes, J., granted defendants' motion for summary judgment on the noneconomic loss count. Lillie Mae Wood and Various Wood appealed by leave granted.

The Court of Appeals *held:*

1. Under the no-fault act, a tort claim for noneconomic loss exists only where there is death, serious impairment of a body function or permanent serious disfigurement. Serious impairment of a body function requires a showing that the injury is objectively manifested, that an important body function is impaired by the injury and that the impairment of that body function is serious.

2. Defendants concede that plaintiff established that the injury was objectively manifested and that the injury affected a serious body function, that being the ability to walk, but

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340-368.

What constitutes sufficiently serious personal injury, disability, impairment, or the like to justify recovery of damages outside of no-fault automobile insurance coverage. 33 ALR4th 767.

defendants deny that the impairment was serious within the meaning of the statute.

3. The undisputed facts clearly establish that the impairment was serious. Accordingly, the trial court erred in granting partial summary judgment in favor of defendants on plaintiffs' noneconomic loss claim.

Reversed and remanded.

1. Negligence — No-Fault Act — Serious Impairment of Body Function.

The question of whether there is serious impairment of a body function within the meaning of the no-fault act must be decided as a matter of law where there is no material factual dispute regarding the nature and extent of a plaintiff's injuries (MCL 500.3135; MSA 24.13135).

2. Negligence — No-Fault Act — Serious Impairment of Body Function.

An injury, in order to be deemed a serious impairment of a body function within the meaning of the no-fault act, must meet three threshold requirements: (1) the injury must be objectively manifested, (2) an important body function must be impaired by the injury, and (3) the impairment of that body function must be serious; whether an impairment is serious should be viewed in light of the other threshold requirements contained in the no-fault act, those being death and permanent serious disfigurement (MCL 500.3135; MSA 24.13135).

3. Negligence — No-Fault Act — Serious Impairment of Body Function.

The central question considered in determining whether an impairment of a body function is serious is whether the ability of the injured person to lead a normal life has been impaired; to qualify as a serious impairment, the interference must be significant and must affect the injured party over an extended period of time; while an injury need not be permanent to be serious, the permanency of the injury is a factor to be considered.

*Mindell & Panzer* (by *Thomas L. Mulcahy*), for plaintiffs.

*Romain, Donofrio & Kuck, P.C.* (by *Ernst W. Kuck*), for defendants.

Before: Sullivan, P.J., and Allen and J. T. Kallman,* JJ.

Per Curiam. Plaintiff Lillie Mae Wood appeals by leave granted from the trial judge's order for partial summary judgment in favor of defendants. The order dismissed that part of plaintiffs' complaint alleging noneconomic loss as the result of injuries plaintiff sustained in an automobile accident in 1981. The court determined that plaintiff's injury did not meet the threshold of serious impairment of body function under the no fault act, MCL 500.3135(1); MSA 24.13135(1).

Plaintiff's injuries arose out of an automobile accident on August 23, 1981, in Wayne County. Plaintiff was operating her vehicle, stopped at a red light, when she was struck from behind by defendant's van. The impact of the collision caused plaintiff to be thrown first forward toward her windshield, then backward in the automobile. It caused the front seat to be torn free from the floor. Emergency personnel who responded to the scene of the accident applied a cervical collar to plaintiff's neck and transported her to the Redford Community Hospital emergency room. She was treated and x-rayed at the hospital and was diagnosed as having a sprained cervical spine. She was prescribed pain medication and, upon her release, was instructed to return in two days for follow-up treatment.

On August 28, 1981, plaintiff began treating with Dr. Neil S. Millman, D.O. She complained of neck pain, restriction of movement in her neck and back, pain radiating into both of her legs, insomnia, chest pains and headaches. Dr. Millman diagnosed plaintiff as having cervical myositis with frozen neck syndrome and temporary radicular

* Circuit judge, sitting on the Court of Appeals by assignment.

pain, sacroiliac synovitis, insomnia and depression. For two months following the accident, plaintiff treated with Dr. Millman twice a week, and continued to have treatments once a week thereafter. To date, she still sees Dr. Millman on a weekly basis. In addition, for some period of time, plaintiff was forced to use a cane to walk and wore a back brace every day. Although plaintiff has been able to dispose of the cane, she still is forced to wear the brace on a regular basis.

In July, 1982, plaintiff was hospitalized for ten days as a result of these injuries. There, she received daily traction and underwent a series of tests. An electromyographic examination taken at the hospital revealed a positive result, indicating that plaintiff suffered from "diffuse irritation of lumbosacral nerve root." Defendants admitted at the hearing on their motion that plaintiff indeed suffers from this condition. After being released from the hospital, plaintiff was confined to her bed and a chair for one month and, except for medical appointments, was further confined to her home for an additional three months.

In August, 1983, plaintiff was treated by Dr. T. A. Podolsky on a referral from Dr. Millman. Dr. Podolsky performed on plaintiff a thermographic examination, which revealed a result consistent with the nerve root irritation diagnosis. Additionally, plaintiff is being treated by a chiropractor on a regular basis.

Prior to her accident, plaintiff was employed at the Boniface Group Home, apparently as a cook and housekeeper. Since her accident, plaintiff was unable to return to work for approximately 3½ years despite several attempts to do so. For the first year following her accident, she was ordered by Dr. Millman not to work; subsequently, upon attempting to return to work on a number of

occasions, she found she was unable to carry out her duties. Apparently, she was able to return to work in January, 1985, but not without limitations.

Plaintiff's claim for damages for noneconomic injuries is based upon MCL 500.3135; MSA 24.13135. This statute states:

> (1) A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of a body function, or permanent serious disfigurement.

When there is no material factual dispute as to the nature and extent of a plaintiff's injuries, the question of serious impairment of body function shall be decided as a matter of law by the court. *Cassidy v McGovern,* 415 Mich 483, 502; 330 NW2d 22 (1982). Since *Cassidy,* this Court has identified three basic requirements which must be met before an injury can be said to constitute a serious impairment of body function: (1) the injury must be objectively manifested, (2) an important body function must be impaired by the injury, and (3) the impairment of that body function must be serious. *Walker v Caldwell,* 148 Mich App 827, 831-832; 385 NW2d 703 (1986). Whether an impairment is serious should be viewed in light of the other threshold requirements contained in the no-fault act: death and permanent serious disfigurement. *Williams v Payne,* 131 Mich App 403; 346 NW2d 564 (1984).

Defendants in the case at bar have admitted two of the above criteria.[1] First, they admit that plain-

[1] Defendants do claim however that many of the facts outlined in plaintiff's brief, as well as plaintiff's exhibits D through M, were not

tiff has suffered lumbosacral nerve root irritation. This injury was objectively manifested in the electromyographic examination of plaintiff given during her 1982 hospitalization and in a subsequent thermogram. Second, defendants have implicitly admitted that this injury has affected an important body function, i.e., plaintiff's ability to walk. They vehemently deny, however, that plaintiff has sustained any injury or impairment that can be interpreted to be serious. We disagree.

When determining whether an impairment of a body function is "serious," the general question asked is whether the plaintiff's ability to lead a normal life has been impaired. *Cassidy, supra,* p 505; *Braden v Lee,* 133 Mich App 215, 218; 348 NW2d 63 (1984); *Page v Clark,* 142 Mich App 697, 699; 370 NW2d 15 (1985). This interference must be significant and affect the plaintiff over an extended period of time. *Guerrero v Schoolmeester,* 135 Mich App 742, 750-751; 356 NW2d 251 (1984), lv den 422 Mich 881 (1985). While an impairment need not be permanent to be serious, the permanency of the injury is a factor to be considered in the final analysis. *Cassidy, supra,* pp 505-506; *Franz v Woods,* 145 Mich App 169, 173; 377 NW2d 373 (1985).

The undisputed facts presented by plaintiff indicate that she has been unable to lead a normal life since her accident. It is uncontested that, still five years after the accident, she wears a back brace almost continuously, treats with two doctors on a weekly basis and takes pain medication. She was

part of the lower court record. The trial court in the instant case did not specifically state which records it reviewed in making its determination that plaintiff had not suffered a serious impairment. This lack of clarity, found frequently in *Cassidy* cases, makes appellate review of the trial court's decision extremely difficult. Nonetheless, we assume that the lower court reviewed only the facts and exhibits contained in the parties' briefs on the motion below.

unable to return to work for 3½ years despite several attempts to do so. Moreover, her ability to participate in social and recreational activities and perform daily household chores has been severely hampered. In light of these uncontested facts, plaintiff has not lived a normal life since her accident.[2]

Accordingly, whether we view this case in the light most favorable to the plaintiff, or under the "clearly erroneous" standard, see *Kelleher v Kuchta,* 138 Mich App 45; 359 NW2d 224 (1984), we reverse the trial court's decision and conclude as a matter of law that plaintiff suffered a serious impairment of body function.

Reversed and remanded for further proceedings not inconsistent with this decision.

---

[2] We recognize that this Court's post-*Cassidy* decisions have made it extremely difficult for plaintiffs to recover for soft tissue injuries by concluding that such injuries in each particular case did not constitute a serious impairment of body function. This is particularly due to the fact that it is difficult for claimants with soft tissue injuries to satisfy the objective manifestation requirements. See e.g. *Franz v Woods, supra,* 145 Mich App 174. The no-fault act however makes no distinction between claimants with soft tissue injuries and those with other injuries. Thus, in a case like this, where plaintiff's soft tissue injuries were objectively manifested, a determination that they did not constitute a serious impairment of bodily function would effectively ignore the fact the injury has prevented plaintiff from leading a "normal life style."