ARABO v TURNBELL

Docket No. 87861. Submitted October 1, 1986, at Marquette. Decided November 19, 1986.

Francis Arabo brought an action in the Oakland Circuit Court against Michael A. Turnbell seeking damages for injuries sustained in an automobile accident. The trial court, Hilda R. Gage, J., granted defendant summary disposition after finding as a matter of law that plaintiff did not suffer a serious impairment of body function. Plaintiff appeals.

The Court of Appeals *held:*

1. An objectively manifested soft tissue injury can constitute a serious impairment of body function. Limited flexion, if diagnosed by a passive range of motion test, will suffice as the type of medical measurement of an injury needed for a finding of objective manifestation. The evidence supports a finding of objectively manifested injuries.

2. Plaintiff's injuries involve an important body function.

3. Plaintiff's injuries are not serious since they do not have a significant impact on his ability to lead a normal life.

Affirmed.

1. INSURANCE — NO-FAULT — SERIOUS IMPAIRMENT OF BODY FUNCTION.

An injury, in order to meet the no-fault threshold of a serious impairment of body function, must be objectively manifested, serious, and it must impair an important body function.

2. INSURANCE — NO-FAULT — SERIOUS IMPAIRMENT OF BODY FUNCTION — SOFT TISSUE INJURIES.

An objectively manifested soft tissue injury can constitute a serious impairment of body function under the no-fault act; limited flexion, if diagnosed by a passive range of motion test,

REFERENCES

Am Jur 2d, Automobile Insurance §§ 357-366.

What constitutes sufficiently serious personal injury, disability, impairment, or the like to justify recovery of damages outside of no-fault automobile insurance coverage. 33 ALR4th 767.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

will suffice as the type of medical measurement of an injury needed for a finding of objective manifestation; an active range of motion test will not suffice.

3. INSURANCE — NO-FAULT — IMPORTANT BODY FUNCTIONS.

The movement of the back and the proper functioning of the shoulder are regarded as important body functions under the no-fault act.

4. INSURANCE — NO-FAULT — SERIOUS INJURIES.

The seriousness of an injury for purposes of the no-fault act is measured by an objective standard; an injury must significantly impair the plaintiff's ability to lead a normal life in order to be regarded as serious; the seriousness of the injury must be measured by comparison to the other two thresholds for recovery found in the no-fault act, death and serious disfigurement; the determination must consider the Legislature's desire to prevent overcompensation for minor injuries and reduce litigation in automobile accident cases.

5. INSURANCE — NO-FAULT — PAIN AND SUFFERING.

One cannot recover under the no-fault act merely for pain and suffering; pain and inconvenience which do not affect the ability to lead a normal life will not suffice to meet the threshold for recovery under the no-fault act.

*Frank R. Langton & Associates, P.C.* (by *N. Dwight Teachworth*), for plaintiff.

*Mellon & McCarthy, P.C.* (by *Steve J. Weiss*), for defendant.

Before: ALLEN, P.J., and CYNAR and R. C. LIVO,* JJ.

PER CURIAM. Plaintiff Francis Arabo was involved in an automobile accident with defendant Michael Alan Turnbell on February 16, 1983. Plaintiff filed a complaint on January 3, 1985, alleging that defendant was negligent. The trial court granted defendant summary disposition pursuant to MCR 2.116(C)(10) on September 18, 1985,

* Circuit judge, sitting on the Court of Appeals by assignment.

having found as a matter of law that plaintiff did not suffer a serious impairment of body function. Plaintiff appeals as of right.

The details of the accident are not germane to the issues raised on appeal. However, it is worth noting that defendant contested the allegations of negligence and alleged comparative negligence. Moreover, directly after the collision, plaintiff told police officers at the accident scene that he had not been injured. He maintains that he began experiencing pain about three hours after the accident.

During the following three years, plaintiff treated with or consulted three physicians. The medical reports of these physicians were attached to defendant's motion for summary disposition in support thereof. It appears that these doctors had different opinions regarding the nature and extent of plaintiff's injuries. However, for reasons set forth hereinafter, we do not regard these differences as material.

Michael Goldman, D.O., opined on June 1, 1983, that plaintiff had soft tissue injuries and a good prognosis. He felt that plaintiff was capable of performing any avocational activity. On October 5, 1983, Dr. Goldman found that plaintiff had "fully and completely recovered from any soft tissue injuries that he sustained as a result of his automobile accident." Further, he opined that plaintiff could engage in any vocational or avocational activity without any restrictions.

In contrast to Dr. Goldman's report, Edward Maxim, M.D., diagnosed plaintiff as having a probable herniated lumbar disc, chronic bursitis and tendonitis in the left shoulder, and osteoarthritis of the cervical spine, lumbosacral spine and left acriomioclavicular joint. He believed that the osteoarthritis probably antedated the accident but

opined that the disc and shoulder soft tissue injuries resulted from the accident. Plaintiff saw Dr. Maxim on only one occasion, April 6, 1984. Dr. Maxim recommended hospitalization with pelvic traction and, thereafter, a back brace or plastic body cast, if responsive to traction, or further testing and possible surgery, if not responsive. Plaintiff never followed up on Dr. Maxim's recommendations.

Finally, Emil Sitto, M.D., examined plaintiff on the day following the accident and diagnosed plaintiff as having a whiplash injury, sprained knees, a sprained left shoulder, and a sprained lumbar spine. On May 13, 1983, Dr. Sitto again diagnosed whiplash injury, a sprained spine which may have aggravated preexisting degenerative arthritis, and traumatic strain of the muscles, ligaments, tendons and connective tissues of the spine.

At the hearing on the motion for summary disposition, plaintiff argued that the motion was premature since discovery was not complete. Plaintiff averred that he intended to depose Drs. Sitto and Maxim on October 16, 1985. This date was not within the cut-off time for discovery prescribed in an order which emanated from the pretrial conference held on April 23, 1985. See MCR 2.301(A)(3). In any event, at the hearing on defendant's motion, plaintiff's counsel represented that these depositions would demonstrate only that Dr. Sitto had treated plaintiff for his back condition after the May 13, 1983, examination.

We note that under *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973), the trial court would not be precluded from granting summary disposition as long as it treated plaintiff's assertion as a "pleading" and gave it the same consideration that would be afforded admissions, depositions, documentary evidence, and affidavits. Moreover,

summary disposition would not be precluded by *Kortas v Thunderbowl & Lounge,* 120 Mich App 84; 327 NW2d 401 (1982), since in *Kortas* the error in granting summary judgment was the failure to consider as true and in a light most favorable to plaintiffs the assertion that their expert would provide testimony which would create a genuine issue of material fact. In the present case, there was no assertion that the deposition testimony of Drs. Sitto and Maxim would create a genuine issue of material fact. Rather, the assertion was limited to the allegation that plaintiff had continued treating with Dr. Sitto after the last examination of which the court had a record. We do not view this assertion as one involving a material fact or as one that creates a genuine issue.

We review a trial court's decision regarding serious impairment by viewing the evidence in a light most favorable to the injured plaintiff and determining (1) whether there is a material factual dispute as to the nature and extent of a plaintiff's injuries and, if not, (2) whether reasonable minds could differ on the question of whether a serious impairment of body function exists. *Akin v Slocum,* 153 Mich App 337; 395 NW2d 269 (1986); *Bennett v Oakley,* 153 Mich App 622; 396 NW2d 451 (1986); but see, *Kelleher v Kuchta,* 138 Mich App 45, 47; 359 NW2d 224 (1984); *Walker v Caldwell,* 148 Mich App 827, 831; 385 NW2d 703 (1986). Whether such an impairment exists must be decided on a case-by-case basis. *Cassidy v McGovern,* 415 Mich 483, 503; 330 NW2d 22 (1982), reh den 417 Mich 1104 (1983). However, in order to meet the threshold of a serious impairment of body function, the injury must be objectively manifested, serious, and it must impair an important body function. *Cassidy,* 504-505.

The trial court indicated that its decision was in

part based on the fact that plaintiff suffered only soft tissue injuries. Contrary to the trial court's intimation, an objectively manifested soft tissue injury can constitute a serious impairment of body function. *Wood v Dart,* 154 Mich App 586; 397 NW2d 843 (1986). Limited flexion, if diagnosed by a passive range of motion test, will suffice as the type of medical measurement of an injury needed for a finding of objective manifestation. *Salim v Shepler,* 142 Mich App 145; 369 NW2d 282 (1985); *Shaw v Martin,* 155 Mich App 89; 399 NW2d 450 (1986). An active range of motion test, where the plaintiff, for example, merely states that he cannot bend, will not suffice. *Shaw, supra.* The medical reports by Drs. Goldman and Maxim indicate that passive range of motion tests were performed on plaintiff's back and left shoulder. Since Dr. Maxim thereafter concluded that plaintiff suffered injuries to his back and shoulder, the evidence when viewed in a light most favorable to plaintiff supports a finding of objectively manifested injuries.

We must also conclude that plaintiff's injuries involved an important body function. The movement of one's back is regarded as an important body function. *Shaw, supra; Sherrell v Bugaski,* 140 Mich App 708, 711; 364 NW2d 684 (1984). Similarly, the proper functioning of one's shoulder is deemed important. *Ulrey v Coy,* 153 Mich App 551; 396 NW2d 480 (1986); *Burk v Warren (After Remand),* 137 Mich App 715, 725; 359 NW2d 541 (1984), lv gtd 422 Mich 938 (1985).

Since we have found the impairment of two important body functions, plaintiff's right to proceed to trial on his negligence claim depends on whether his injuries were also serious. The seriousness of an injury is measured by an objective standard. In order to be regarded as serious, the

injury must significantly impair the plaintiff's ability to lead a normal life. Moreover, the seriousness of the injury must be measured by comparison to the other two thresholds for recovery found in the no-fault act, death and serious disfigurement. The determination must also take into consideration the legislative reasons for limiting the recovery of noneconomic losses, namely, the prevention of overcompensation for minor injures and the reduction of litigation in automobile accident cases. *Cassidy,* 503, 505; *Wood, supra; Routley v Dault,* 140 Mich App 190, 193; 363 NW2d 450 (1984); lv gtd 422 Mich 938 (1985).

Plaintiff was deposed on September 18, 1985. Although he is Chaldean and speaks no English, an interpreter translated the questions for plaintiff and then translated plaintiff's answers. Plaintiff testified that his arm still feels numb and that he has back pain. However, he has not taken pain medication for over two years. Because of his back, it hurts to stand after he has been sitting for two hours. In addition, he stated that before the accident he could carry a big briefcase, but now he cannot even hold a bag, apparently because of a problem with gripping. Presumably, plaintiff could hold a bag or briefcase with his right hand. Plaintiff also asserted that before the accident he was capable of working but maintained that now he had lost that capacity. However, plaintiff admitted that he had not worked since he came to the United States in 1980. He also admitted that he did not play sports before or after the accident and that he did not do housework. He did mow the lawn but now his son takes care of this task. Plaintiff now attends English classes for approximately two hours per day. When not in class, he watches television or listens to an Arabic radio station. Plaintiff stated that before the accident he

often went to an Arab casino or coffee shop, whereas now he goes infrequently.

Viewed objectively, we cannot conclude that plaintiff's injuries have had a significant impact on his ability to lead a normal life. Besides mowing the lawn, plaintiff did not identify any activity which he performed before the accident that he could no longer perform because of his injuries. We do not doubt that plaintiff has experienced pain. However, one cannot recover under the no-fault act merely for pain and suffering. Pain and inconvenience which do not affect the ability to lead a normal life will not suffice to meet the threshold for recovery under the no-fault act. *Kroft v Kines,* 154 Mich App 448; 397 NW2d 822 (1986).

Affirmed.