*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VERNICE YVETTE WILSON,

        Plaintiff-Appellant,

v

SAFECO INSURANCE COMPANY OF ILLINOIS,
and GABRIELLE NICOLE HILL,

        Defendants-Appellees.

UNPUBLISHED
November 9, 2023

No. 361355
Wayne Circuit Court
LC No. 20-009333-NI

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Plaintiff, Vernice Wilson, appeals as of right the trial court's grant of summary disposition in favor of defendants Safeco Insurance Company and Gabrielle Hill under MCR 2.116(C)(10). Considering the evidence in the light most favorable to Wilson, we find that the evidence Wilson submitted to the trial court created material questions of fact regarding the nature and extent of her injuries. We reverse and remand for proceedings consistent with this opinion.

## I. BACKGROUND

This negligence action arises from a July 24, 2017 chain-reaction motor vehicle accident. Hill's vehicle collided with a vehicle in the intersection, spun out of control, struck Wilson's vehicle, and forced Wilson's vehicle into a fourth vehicle. All four vehicles sustained disabling damage. At the time of the accident, Wilson was insured by Safeco and her policy included uninsured/underinsured motorist coverage.

Emergency medical personnel transported Wilson from the accident scene to a local hospital. Wilson reported to the emergency room medical staff that her vehicle was struck on the driver's side, but she was able to exit her vehicle on her own and walk. She complained of pain in the back of her head, left side of her neck, right shoulder, and upper back. Wilson underwent a CT scan of her cervical spine and head, and an x-ray of her thoracic spine, all of which were negative for fractures and subluxation. She was diagnosed with a strain resulting from a motor vehicle collision, and instructed to follow-up with her primary care physician.

-1-

Two days after the accident, Wilson was examined by Dr. Allan Schwartz at Mercyland Health Services. Wilson complained of constant sharp, shooting neck pain radiating to her upper extremities. She reported that the pain worsened with movement such as bending or rotating the spine, and that neck movement caused headaches. She also complained of constant sharp, shooting pain in her upper and lower back. She reported that the pain worsened with movement such as bending or rotating the spine, and standing for long periods of time. She rated her neck and back pain as an 8 on a scale of 1-10. A physical examination revealed muscle spasms and tenderness in the neck and back, bilateral shoulder tenderness, limited range of motion with pain in her upper extremities, decreased side bending in her neck, and moderately reduced side bending and rotation in her lower back.

Based on the subjective and objective findings, Dr. Schwartz opined that Wilson sustained neck pain, upper back pain, and lower back pain causally-related to the subject motor vehicle accident. Dr. Schwartz referred Wilson to physical therapy three times weekly for four weeks to address her pain, inflammation, muscle spasms, and decreased range of motion. As a result of Wilson's injuries, Dr. Schwartz concluded that Wilson was "disabled from any gainful employment . . . for 4 weeks[.]" He further opined that Wilson could not do housework for four weeks, and was unable to drive for four weeks.

Wilson underwent several magnetic resonance imaging (MRI) tests on September 20, 2017. Relevant to this appeal, the cervical MRI showed disc herniations at C4-C5, C5-C6, and C6-C7. It also showed multilevel neural foraminal narrowing from disc and facet changes in the mid-cervical spine, as well as straightening of the normal lordotic curve. The lumbar MRI showed a "[g]rade-1 anterolisthesis [of] L4 on L5" with a "mild diffuse disc bulge at this level." The thoracic MRI was normal.

On December 1, 2017, Wilson underwent a lumbar epidural steroid injection at L5-S 1 by Dr. Pribil. In January 2018, Dr. Pribil reviewed Wilson's 2017 cervical and lumbar MRIs. Dr. Pribil opined that the cervical MRI revealed

> evidence of disc herniation starting at C4-5, C5-6 and C6-7. The patient has compression of the disc space at C5-6 and C6-7 maximal. Neural foraminal narrowing is significant at C4-5 central to the right, diffuse. At CS-6, there is bilateral neural foraminal narrowing with diffuse indentation into the central aspect of the spinal canal. There is deformation of the spinal cord itself at C6-7 as well as bilateral neural foraminal narrowing.

Dr. Pribil recommended that Wilson undergo a total disc replacement at C4-5, C5-6, and C6-7.

Dr. Pribil opined that Wilson's lumbar MRI revealed

> desiccation and dehydration starting at the L2-3 and L3-4 levels. She has a disc herniation diffuse with bilateral neural foraminal narrowing at L4-5 and L5-S1. There is bilateral neural foraminal narrowing facet hypertrophy particularly at the L4-5 level right equal left. At L5-Sl, it is bilateral equal with a slight left-side preponderance narrowing and effacement of the ganglion on the left at L5-S1.

Dr. Pribil recommended that Wilson undergo a bilateral neural foraminotomy at the L4-5 and L5-S1 levels. Dr. Pribil performed a second lumbar epidural steroid injection at L5-S1 on January 19, 2018. Wilson had a third lumbar epidural steroid injection at L4-L5 on August 29, 2018 by Dr. James at Mercyland. Dr. James also performed at least two cervical epidural steroid injections at C5-C6.

On January 10, 2019, Wilson presented to Dr. Lucia Zamorano, a neurosurgeon, for a consult at the request of Mercyland Health Services. She complained of sporadic throbbing, aching, headaches at the base of her skull or the orbital region. She reported dizziness with certain movements, loss of balance, and exacerbated memory issues. She also complained of shooting, bilateral neck pain radiating to both shoulders that she rated at a 7 on a scale of 1-10. She further reported constant, achy lower back pain that she rated at a 3 on a scale of 1-10. Although the back pain previously radiated to both legs, she denied any radiating leg pain when Dr. Zamorano examined her. She complained that her back pain was exacerbated with flexion, hyperextension, and rotation of the torso. Although Wilson admitted that she suffered neck and back pain as the result of a 2009 motor vehicle accident, she reported that pain resolved after she completed physical therapy. Dr. Zamorano made the following findings during his physical examination: (1) "paravertebral muscle spasm and tenderness with palpation of the cervical, and lumbar spine[;]" (2) "limitation of range of motion of the lumbar spine in flexion, extension and lateral bending[;]" (3) "limitation in the range of motion of the cervical spine, including flexion, extension and lateral rotation." Dr. Zamorano noted that the cervical MRI showed herniations at several levels and the lumbar MRI showed "a disc herniation of about 1 cm and anterolisthesis at L4-L5." He ordered additional diagnostic testing to determine whether Wilson was a candidate for an anterior cervical discectomy and fusion. He also "prescribed and fitted [Wilson] with a cervical collar and lumbosacral orthotic to help manage pain by restricting mobility."

Wilson filed suit against defendants.[1] Wilson alleged a negligence claim against Hill, whom Wilson maintained was not covered by a policy of no-fault insurance at the time of the accident.[2] Wilson further alleged Safeco denied her claim for uninsured/underinsured motorist benefits and refused to arbitrate the claim. Wilson alleged that she sustained a serious impairment of a body function as a result of the accident, and alleged that she suffered both economic and noneconomic damages.

Hill moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that Wilson could not establish a threshold injury pursuant to MCL 500.3135. Hill asserted that Wilson had

---

[1] There was a prior action between the parties, Wayne Circuit Court Case No. 18-003896-NF, which was dismissed before the instant action was filed.

[2] In Hill's answer to the complaint, she neither admitted nor denied that she was uninsured. And Safeco maintained in its initial disclosures that Wilson "has not proven that Co-Defendant Gabrielle Nicole Hill was uninsured or underinsured on the date of loss." In its motion for summary disposition, Safeco alleged that Wilson "has not yet and will not exhaust the bodily insurance benefits available by the tortfeasor, Gabrielle Hill's, insurance policy . . . ." Thus, it appears from the record that Hill was covered by a valid no-fault insurance policy at the time of the accident.

not shown that she suffered an objectively manifested impairment or that her impairment affected her general ability to lead a normal life. Hill attributed Wilson's pain complaints entirely to injuries that Wilson sustained in an August 2, 2002 motor vehicle accident. Hill asserted that Wilson had a long history of chronic back pain, and maintained that she treated for her back pain just two years before the subject accident.

Safeco also moved for summary disposition, arguing that Wilson could not establish a threshold injury pursuant to MCL 500.3135 and thus was not entitled to uninsured/underinsured benefits. Safeco argued that Wilson failed to present any objective evidence that she sustained injuries to her neck, back, and bilateral shoulders in the subject accident. Safeco contended that Wilson's subjective complaints of pain and self-imposed restrictions were insufficient to meet the statutory threshold. Safeco further argued that even if Wilson demonstrated an objectively manifested impairment, she could not show that the impairment had affected her ability to lead her normal life.

Wilson responded that she *had* suffered an objectively manifested impairment that affected her general ability to live her life. Wilson attached documentary evidence, including medical records and her deposition testimony, to her response brief. She asserted that the cervical and lumbar MRIs taken two months after the accident demonstrated multiple objective findings that her treating physicians related to the subject accident. Wilson contended that her injuries affected her ability to lead her normal life because she was unable to work for over a year following the accident, could not take care of personal needs, perform household chores, or partake in recreational activities.

Following a hearing, the trial court granted defendants' motions, holding that Wilson "did not sustain an objectively manifested impairment as a result of the alleged July 24, 2017 motor vehicle accident." Wilson subsequently moved for reconsideration, arguing that the trial court palpably erred by failing to consider Wilson's treating physicians' medical opinions attributing her impairments to the subject accident. The trial court denied Wilson's motion for reconsideration, finding that Wilson's motion failed to present any evidence that the court had not already considered when ruling on defendants' motions for summary disposition. This appeal followed.

## II. ANALYSIS

Wilson argues that the trial court erred by granting defendants' motion for summary disposition pursuant to MCR 2.110(C)(10) because there is a genuine issue of material fact whether she suffered a serious impairment of a body function as a result of the July 2017 accident. We agree.

## A. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When reviewing a motion for summary disposition under MCR 2.116(C)(10), a trial court must consider the evidence submitted by the parties in the light most favorable to the non-moving party and may only grant the motion if there is no genuine issue of material fact. *El-Khalil*, 504 Mich at 160. "A

genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up). But "[t]he court is not permitted to assess credibility, or to determine facts" in analyzing whether a genuine issue of material fact exists. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

## B. SERIOUS IMPAIRMENT THRESHOLD

Pursuant to the no-fault act, MCL 500.3101 *et seq*., "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered . . . serious impairment of body function . . . ." At the time of the accident, MCL 500.3135(5) defined a "serious impairment of body function" as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." 2012 PA 158.[3] In *McCormick v Carrier*, 487 Mich 180, 217; 795 NW2d 517 (2010), our Supreme Court held that there are three prongs that must be established to show a "serious impairment of body function": "(1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living)."[4] The parties do not dispute the second prong in this case.

---

[3] Pursuant to an amendment of MCL 500.3135, enacted under 2019 PA 21 and 22, and made effective June 11, 2019, subsection (5) of the statute now provides:

As used in this section, "serious impairment of body function" means an impairment that satisfies all of the following requirements:

(a) It is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person.

(b) It is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person.

(c) It affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living. Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last. This examination is inherently fact and circumstance specific to each injured person, must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident.

[4] We note that the *McCormick* Court referred to the unambiguous language of MCL 500.3135(7), which contained the identical "objectively manifested impairment" language that was in the version of MCL 500.3135(5) in effect at the time of this accident. See 2002 PA 697.

The first prong requires a plaintiff to prove that he or she suffered an objectively manifested impairment of a body function. See *McCormick*, 487 Mich at 195. "[T]he common meaning of 'objectively manifested' in MCL 500.3135[ ] is an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id*. at 196. The proper inquiry is whether the alleged *impairment* was objectively manifested, not whether the *injury* was objectively manifested. *Id.* at 197 ("while an injury is the actual damage or wound, an impairment generally relates to the effect of that damage"); see also *Patrick v Turkelson*, 322 Mich App 595, 606; 913 NW2d 369 (2018). "[T]he focus is not on the injuries themselves, but how the injuries affected a particular body function." *McCormick*, 487 Mich at 197. Medical testimony is generally, but not necessarily, required to establish that there is a physical basis for a subjective complaint of pain and suffering. *Id*. at 198; see also *Patrick*, 322 Mich App at 607 ("Although mere subjective complaints of pain and suffering are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested.").

The second prong requires a plaintiff to establish that the impairment has affected the plaintiff's general ability to lead his or her normal life. An "impairment to an important body function affects a person's general ability to lead a normal life if it has 'an influence on some of the person's capacity to live in his or her normal manner of living.' " *Patrick*, 322 Mich App at 607, quoting *McCormick*, 487 Mich at 202. This analysis requires "a subjective, person- and fact-specific inquiry that must be decided on a case-by-case basis." *McCormick*, 487 Mich at 202. "Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *Id.* "[T]he statute merely requires that a person's general ability to lead his or her normal life has been *affected*, not destroyed." *Id.* "Thus, courts should consider not only whether the impairment has led the person to completely cease a pre-incident activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id*.

"[T]here is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id*. at 203. "[T]he statute does not create an express temporal requirement as to how long an impairment must last in order to have an effect on 'the person's general ability to live his or her normal life.' " *Id.* "[T]he plain text of the statute and these definitions demonstrate that the common understanding of to 'affect the person's ability to lead his or her normal life' is to have an influence on some of the person's capacity to live in his or her normal manner of living." *Id*. at 202.

A court must begin its analysis under MCL 500.3135 by determining "whether there is a factual dispute regarding the nature and the extent of the person's injuries, and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met." *Id*. at 215. If there is a genuine issue of material fact regarding the nature and extent of a person's injuries, it is the jury's role to decide the threshold question of whether there was a serious impairment of body function; the issue may not be decided as a matter of law. *Patrick*, 322 Mich App at 608.

## C. DISCUSSION OF THE EVIDENCE

First, we note that the argument section of Wilson's brief on appeal does not address the law regarding the serious impairment threshold requirements. And her statement of facts contains improper arguments in support of her position and citations to legal authorities.[5] But a poorly organized brief on appeal does not preclude our de novo review.

When we review a trial court's decision de novo, we "review the issue independently, without any required deference to the trial court." *Millar v Constr Code Auth*, 501 Mich 233, 237; 912 NW2d 521, 524 (2018). We review a motion for summary disposition on appeal in the same way that the trial court was obligated to review it. See *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). Thus, when we review a motion brought under MCR 2.116(C)(10), we "must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). Our role is to determine whether the motion should have been granted on the merits. See *Morales v Auto-Owners Ins Co*, 458 Mich 288, 294; 582 NW2d 776 (1998). And, in doing so, we are "liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

Although absent from the argument section in her brief on appeal, Wilson's response to defendants' motions for summary disposition set forth the statutory threshold requirements and discussed *McCormick*'s interpretation and application of those threshold requirements. Wilson's motion response included the emergency department treatment notes, Dr. Schwartz's July 26, 2017 office notes and disability certificate, the September 2017 cervical and lumbar MRI reports, records of lumbar and cervical epidural steroid injections, Dr. Zamorano's January 10, 2019 consultation report, and Wilson's deposition testimony. Wilson quoted portions of her motion response, as well as her motion for reconsideration, in her brief on appeal. She also included her motion response and supporting exhibits in her appendix on appeal.

The medical records submitted by Wilson in response to defendants' motions for summary disposition constituted evidence that the impairments were objectively manifested, as revealed by the physicians' physical examinations of Wilson and the physicians' review of the MRIs. The "impairments" in this case are pain and lack of mobility. Specifically, Wilson testified that she suffered pain in her neck, upper shoulders, and lower back. Dr. Schwartz's physical examination of Wilson just two days after the accident revealed muscle spasms and tenderness in the neck and back, bilateral shoulder tenderness, limited range of motion with pain in her upper extremities, decreased side bending in her neck, and moderately reduced side bending and rotation in her lower back. Five months later, Dr. Zamorano also documented spasms, tenderness, and limited range of motion in Wilson's neck and back. This Court has held that muscle spasms are objective

---

[5] "All material facts, both favorable and unfavorable, must be fairly stated without argument or bias." MCR 7.212(C)(6).

manifestations of an injury. *Franz v Woods*, 145 Mich App 169, 176; 377 NW2d 373 (1985).[6] Limited range of motion is also an objectively manifested impairment. See *McCormick*, 487 Mich at 218. Additionally, Dr. Zamorano noted that the cervical MRI showed herniations at several levels and the lumbar MRI showed "a disc herniation of about 1 cm and anterolisthesis at L4-L5," which are also objective findings. Dr. Pribil also opined that the MRI revealed cervical disc herniations at several levels, and lumbar disc herniations. Even the defense medical evaluator noted that an October 2020 EMG showed "left index median digit sensory latency and right median digit 1 distal sensory latency" and Wilson was "[d]iagnosed with bilateral median mononeuropathies, carpal tunnel syndrome on the wrists, and remote right C7 radiculopathy." The defense medical evaluator further noted that the September 2017 cervical MRI "indicates multilevel disc herniations contributing to canal narrowing at CS-6 and C6-7" and the September 2017 lumbar MRI showed a "disc bulge mild at L4-5." Contrary to the trial court's conclusions, the record contains evidence of objective findings to support Wilson's subjective complaints of pain.

Although Wilson only spent a little over a page in her brief on appeal arguing that the trial court improperly determined questions of fact regarding causation, the medical records submitted by Wilson in response to defendants' motions for summary disposition constituted evidence that the subject accident was the cause of her impairments.[7] Based on the subjective and objective findings during Dr. Schwartz's physical examination just two days after the accident, he opined that Wilson sustained neck pain, upper back pain, and lower back pain causally-related to the subject motor vehicle accident. Dr. Zamorano made similar subjective and objective findings during his physical examination of Wilson in January 2019 and, based on those findings, he opined that the subject accident "resulted in headaches, exacerbated neck pain, bilateral shoulder pain, and exacerbated low back pain."[8]

Defendants argue that Wilson's alleged injuries are pre-existing conditions and were not caused by the subject accident. Defendants assert that Wilson's medical records reflect that she sustained a headache, back pain, and right shoulder tenderness as the result of a 2002 motor vehicle accident, and further assert she was treated for "chronic back pain" two years before the subject accident. The existence of a preexisting condition does not preclude recovery if the plaintiff

---

[6] *Franz* was overruled by *DiFranco v Pickard*, 427 Mich 32; 398 NW2d 896 (1986), which was subsequently superseded by amendments to MCL 500.3135. As highlighted in *McCormick*, the *Franz* Court evaluated whether the evidence substantiated an objective manifestation of an *injury* rather than an *impairment*. But the point remains the same. An involuntary muscle contraction (spasm) is an objective finding that can be felt by the examiner.

[7] When we review a motion brought under MCR 2.116(C)(10), we "must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Radtke*, 442 Mich at 374.

[8] Wilson reported to Dr. Zamorano that she was involved in a prior automobile accident in 2009 that resulted in cervical and lumbar pain. She stated that she completed physical therapy for those injuries and denied having any pain after completing physical therapy.

establishes that the accident worsened the condition or its symptoms. *Wilkinson v Lee*, 463 Mich 388, 395; 617 NW2d 305 (2000). Indeed, Wilson admitted that she suffered neck, head, shoulder, and back pain as a result of a motor vehicle accident that occurred more than 10 years ago, and she described that pain as "similar" to the pain she suffered after the subject accident. But she testified that the pain from the prior accident resolved within approximately 10 months of that accident. And Wilson testified that she was not experiencing pain before the subject accident. Even assuming that Wilson did have preexisting neck and back pain, Dr. Zamorano opined that the subject accident exacerbated Wilson's prior neck and back pain. Moreover, the defense medical evaluator opined that Wilson suffered a "possible temporary aggravation of a degenerative condition in her neck and back, as well as contusion to the shoulder as a result of the [2017] accident."

"Although causation cannot be established by mere speculation, a plaintiff's evidence of causation is sufficient at the summary disposition stage to create a question of fact for the jury if it establishes a logical sequence of cause and effect, notwithstanding the existence of other plausible theories, although other plausible theories may also have evidentiary support." *Patrick*, 322 Mich App 595, 617; 913 NW2d 369 (2018) (cleaned up ). "Causation is an issue that is typically reserved for the trier of fact unless there is no dispute of material fact." *Id*. at 616. The shortcomings alleged by defendants pertain to Wilson's credibility and the credibility of her treating physicians, which we cannot consider for purposes of summary disposition. *Skinner*, 445 Mich at 161.

The parties also dispute whether Wilson's neck and back injuries affected her general ability to lead her normal life.[9] The test for determining if an injury has affected a person's general ability to lead a normal life is subjective and fact-specific. *McCormick*, 487 Mich. at 202. "Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *Id*. At the time of the accident, Wilson was employed as a part-time rental tool associate at Home Depot. She testified that a doctor from Mercyland disabled her from employment for approximately one year after the accident as a result of her lower back, neck, and upper shoulder pain.[10] Wilson testified that the same doctor restricted her from performing household chores for approximately nine months and outdoor yardwork for approximately 11 to 12 months. She was also unable to drive for approximately six months after the accident, and her driving was "limited" for another six months pursuant to the Mercyland doctor's restrictions.

Wilson testified that she was very active before the accident. In addition to cleaning her home and performing yard work, she bowled, went putt-putt golfing with her granddaughter, roller skated with her granddaughter, played pool, hit balls in batting cages, and went go-karting. But as a result of the injuries that she sustained in the accident, she was unable to do any of those things

---

[9] The trial court did not reach this issue because it found that Wilson failed to establish the first prong of the statutory threshold. But defendants argue the issue as an alternative ground to affirm the trial court's grant of their motions for summary disposition, so we address it here.

[10] In July 2018, Wilson returned to work at Home Depot with restrictions on standing and lifting for the first month.

for approximately 1 ½ years after the accident. Wilson testified that her neck pain eventually resolved and her back pain was not "as bad as it was in the beginning." She maintained that her back pain is exacerbated with activities involving pulling and bending.

Wilson's injuries did not completely destroy her normal life, did not impact every facet of her life, and have improved or resolved over time. But the legal threshold only requires evidence "that a person's general ability to lead his or her normal life has been *affected*, not destroyed." *McCormick*, 487 Mich 202. Further, "the statute does not create an express temporal requirement as to how long an impairment must last in order to have an effect on 'the person's general ability to live his or her normal life.' " *Id*. at 203. We conclude that Wilson has satisfied the threshold.

Viewing the evidence presented to the trial court in a light most favorable to Wilson, there is a factual dispute concerning the nature and extent of Wilson's injuries, and that the dispute is material to a determination of whether she has suffered a serious impairment. Because there is a genuine issue of material fact regarding the nature and extent of Wilson's injuries, it is the jury's role to decide the threshold question of whether there was a serious impairment of body function. *Patrick*, 322 Mich App at 608.

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Anica Letica
/s/ Sima G. Patel